**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| A.A., A.B., A.D., A.G., A.P., A.S., A.V., Al.C., Am.P., An.A., An.D., Ar.A., Ari.R., Arn.R., B.D., B.M., B.T., C.C., C.S., C.V., D.D.R., D.L., E.A., E.C., E.D.C., E.D.L., E.G., E.L., E.M., Ed.T., En.C., Er.T., F.B., F.S., F.T., G.A., G.D.L., G.G., G.O., G.S., G.T., H.V., I.E., J.A., J.B., J.C., J.D.C., J.F., J.J.G., J.L., J.N.B., J.O., J.P., J.S., J.T., Ji.T., Jo.B., L.G., L.L., L.N., L.P., L.V., M.A., M.D.L., M.G., M.R., M.S., N.C., P.C., R.A., R.B., R.B.E., R.C., R.D., R.E., R.F., R.I., R.L., R.N., R.P., R.S., R.T., R.V., Ra.D., Ra.G., Ra.L., Ra.V., Re.C., Re.D., Rh.P., Ri.C., Ri.O., Ro.D., Ro.L., Ro.P., Rod.O., Rog.B., Rol.P., Rom.B., Ron.O., S.N., T.L., V.A., V.B., V.M., and W.B.,<br><br>    Plaintiffs,<br><br>  v.<br><br>OMNICOM GROUP INC., PORTLAND PR INC., OGILVY GROUP, LLC, OGILVY PUBLIC RELATIONS WORLDWIDE LLC, and MEMAC OGILVY & MATHER LLC,<br><br>    Defendants. | Case No.: 1:25-cv-03389<br><br><br><br><br><br>ORAL ARGUMENT<br>REQUESTED |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

**DAVIS+GILBERT LLP**
James R. Levine
Gregg A. Gilman
William S. Kukin
1675 Broadway
New York, New York 10019
(212) 468-4800
jlevine@dglaw.com
ggilman@dglaw.com
wkukin@dglaw.com

*Attorneys for Defendants Omnicom*
*Group Inc. and Portland PR Inc.*

Steven P. Lehotsky*
Mary Elizabeth Miller*
Lehotsky Keller Cohn LLP
200 Massachusetts Avenue, NW, Suite 700
Washington, D.C. 20001
steve@lkcfirm.com

Mark M. Rothrock*
Lehotsky Keller Cohn LLP
8513 Caldbeck Drive
Raleigh, NC 27615

* Admitted *Pro hac vice*

*Attorneys for Defendants Ogilvy Group,*
*LLC, Ogilvy Public Relations Worldwide*
*LLC, and Memac Ogilvy & Mather LLC*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION .................................................................................................. 1

ARGUMENT ....................................................................................................... 2

    I.     PLAINTIFFS FAIL TO STATE A CLAIM ............................................... 2

          A.    Plaintiffs Do Not Plead Defendants' "Participation" in a "Venture" ............... 2

               1.    The Complaint Does Not Adequately Plead a TVPRA Venture ............. 2

               2.    Defendants Did Not Participate in the Alleged Venture .......................... 4

               3.    Plaintiffs Cannot Assert Indirect Claims Against Omnicom or Ogilvy Group ......................................................................................... 7

          B.    Plaintiffs Do Not Plead Defendants' Actual or Constructive Knowledge of Any TVPRA Violation as to Plaintiffs ............................................................ 8

          C.    Plaintiffs Do Not Plead that Defendants Knowingly Benefitted from Participation in the Alleged Venture ................................................................ 10

          D.    Plaintiffs Do Not Adequately Plead a Primary Violation of the TVPRA ........ 11

          E.    Plaintiffs' New York Law Claim Fails ............................................................ 12

    II.    PLAINTIFFS' TVPRA CLAIM, AS PLEADED, VIOLATES ARTICLE III ......... 12

    III.   PLAINTIFFS' CLAIMS SEEK TO IMPOSE LIABILITY FOR FIRST AMENDMENT PROTECTED SPEECH ................................................. 14

    IV.   PLAINTIFFS' CLAIMS QUESTION THE VALIDITY OF QATAR'S OFFICIAL ACTS AND ARE THEREFORE BARRED BY THE ACT OF STATE DOCTRINE ........................................................................ 17

    V.    NEITHER THE TVPRA NOR NEW YORK LAW APPLIES EXTRATERRITORIALLY, AND PLAINTIFFS HAVE NOT ALLEGED DOMESTIC APPLICATIONS ............................................................... 18

    VI.   RESTITUTION IS NOT AVAILABLE UNDER § 1593 FOR § 1595 CIVIL REMEDY CLAIMS ............................................................................. 20

    VII.  THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANT MEMAC ........................................................................................... 21

CONCLUSION .................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anora v. Oasis Pro. Mgmt. Grp., Ltd.*,
    2021 WL 11114531 (S.D.N.Y. Mar. 19, 2021) ...................................................................11

*Anora v. Oasia Pro. Mgmt. Grp., Ltd.*,
    2021 WL 11114539 (S.D.N.Y. Aug. 31, 2021) ..................................................................11

*Bigio v. Coca-Cola Co.*,
    675 F.3d 163 (2nd Cir. 2012)..............................................................................................8

*Citizens United v. FEC*,
    558 U.S. 310 (2010)...........................................................................................................15

*Corradino v. Liquidnet Holdings Inc.*,
    2021 WL 2853362 (S.D.N.Y. July 8, 2021) ......................................................................10

*Coubaly v. Cargill, Inc.*,
    144 F.4th 343 (D.C. Cir. 2025)...............................................................................2, 13, 14

*Crystal IS, Inc. v. Nitride Semiconductors Co.*,
    2023 WL 2726702 (N.D.N.Y. Mar. 31, 2023) ..................................................................22

*Doe I v. Apple Inc.*,
    96 F.4th 403 (D.C. Cir. 2024)...................................................................................2, 4, 13

*Doe v. Red Roof Inns, Inc.*,
    21 F.4th 714 (11th Cir. 2021) ..............................................................................................5

*Does v. Reddit, Inc.*,
    51 F.4th 1137 (9th Cir. 2022) ............................................................................................11

*Drimal v. Tai*,
    786 F.3d 219 (2d Cir. 2015)................................................................................................3

*Expressions Hair Design v. Schneiderman*,
    581 U.S. 37 (2017)..............................................................................................................15

*F.C. v. Jacobs Sols., Inc.*,
    2025 WL 1766069 (D. Colo. June 26, 2025).....................................................................12

*Field Day, LLC v. Cnty. of Suffolk*,
    463 F.3d 167 (2d Cir. 2006)...............................................................................................14

*First Am. Corp. v. Price Waterhouse LLP,*
    988 F. Supp. 353 (S.D.N.Y. 1997) ...................................................22

*Fuld v. Palestine Liberation Org.,*
    606 U.S. 1 (2025) ..............................................................................22, 23

*G.M. v. Choice Hotels Int'l, Inc.,*
    725 F. Supp. 3d 766 (S.D. Ohio 2024) ..............................................4

*Geiss v. Weinstein Co. Holdings LLC,*
    383 F. Supp. 3d 156 (S.D.N.Y. 2019) ................................................10, 11

*Grytsyk v. Morales,*
    527 F. Supp. 3d 639 (S.D.N.Y. 2021) ................................................7

*Kashef v. BNP Paribas S.A.,*
    925 F.3d 53 (2d Cir. 2019) .................................................................17

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,*
    732 F.3d 161 (2d Cir. 2013) ...............................................................21

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ...........................................................................12

*Mia v. Kimberly-Clark Corp.,*
    2025 WL 752564 (D.D.C. Mar. 10, 2025) .........................................19, 20

*Morrison v. Nat'l Australia Bank Ltd.,*
    561 U.S. 247 (2010) ...........................................................................19

*N.Y. Times v. Sullivan,*
    376 U.S. 254 (1964) ...........................................................................14

*Nestlé USA, Inc. v. Doe,*
    593 U.S. 628 (2021) ...........................................................................18

*Ngono v. Owono,*
    2024 WL 911797 (2d Cir. Mar. 4, 2024) ...........................................11

*Peterson v. Bank WMarkazi,*
    121 F.4th 983 (2d Cir. 2024) ..............................................................21

*Ratha v. Phatthana Seafood Co.,*
    35 F. 4th 1159 (9th Cir. 2022) ...........................................................10

*Ridge Clearing & Outsourcing Sols., Inc. v. Khashoggi,*
    2011 WL 3586455 (S.D.N.Y. Aug. 12, 2011) ....................................21

*RJR Nabisco v. European Cmty.*,
    579 U.S. 325 (2016) ............................................................................................ 18, 19

*Rocker Mgmt., L.L.C. v. Lernout & Hauspie Speech Prods. N.V.*,
    2005 WL 3658006 (D.N.J. June 7, 2005) ............................................................... 22

*Rodriguez v. Pan Am. Health Org.*,
    29 F.4th 706 (D.C. Cir. 2022) ............................................................................... 20

*Roe v. Howard*,
    917 F.3d 229 (4th Cir. 2019) ........................................................................... 18, 19

*Shcherb v. Angi Homeservices Inc.*,
    2020 WL 2571041 (S.D.N.Y. May 21, 2020) ........................................................ 7, 8

*Snyder v. Phelps*,
    562 U.S. 443 (2011) ................................................................................................. 14

*Solomon v. Flipps Media, Inc.*,
    136 F.4th 41 (2d Cir. 2025) ................................................................................... 19

*Spagnola v. Chubb Corp.*,
    264 F.R.D. 76 (S.D.N.Y. 2010) ................................................................................ 8

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ................................................................................................. 12

*In re Terrorist Attacks on Sept. 11, 2001*,
    657 F. Supp. 3d 311 (S.D.N.Y. 2023) .................................................................... 19

*United States v. Alvarez*,
    567 U.S. 709 (2012) ........................................................................................... 14, 15

*United States v. Hilliard*,
    2024 WL 3634201 (2d Cir. Aug. 2, 2024) ............................................................ 15

*United States v. Sergentakis*,
    2015 WL 3763988 (S.D.N.Y. June 15, 2015) ........................................................ 15

*United States v. Stevens*,
    559 U.S. 460 (2010) ................................................................................................. 15

*Universal City Studios, Inc. v. Corley*,
    273 F.3d 429 (2d Cir. 2001) ................................................................................... 16

*Universal City Studios, Inc. v. Reimerdes*,
    82 F. Supp. 2d 211 (S.D.N.Y. 2000) ...................................................................... 15

*W.K. v. Red Roof Inns, Inc.*,
    2024 WL 2892322 (N.D. Ga. June 10, 2024) .........................................................................20

*World Wide Mins., Ltd. v. Republic of Kazakhstan*,
    296 F.3d 1154 (D.C. Cir. 2002) ..........................................................................................17

**Statutes**

18 U.S.C. §1591 ...........................................................................................................................2, 11

18 U.S.C. §1593 ..........................................................................................................................20, 21

18 U.S.C. §1595 ...........................................................................2, 4, 8, 9, 11, 18, 19, 20, 23

N.Y. Penal Law §135.35 ................................................................................................................20

## <u>INTRODUCTION</u>

Plaintiffs assert a sweeping theory of liability divorced from the text of the TVPRA, black letter law, and binding precedent. Their Opposition fails to cure the fatal deficiencies in their Complaint. *First*, their allegations fail to state a claim many times over. They do not—and cannot—allege any connection at all between Defendants and the purported perpetrators of the labor abuses in Qatar—Plaintiffs' direct Employers. That ends this case. *Second*, Plaintiffs cannot plausibly allege their injuries are fairly traceable to Defendants' conduct. They effectively argue that they must have standing because Congress granted a right to sue under the TVPRA, a position the Supreme Court has squarely rejected because it would eviscerate Article III. *Third*, the First Amendment bars Plaintiffs' claims. The Complaint seeks to hold Defendants liable for their protected speech. No doubt recognizing this, the Opposition tries to rewrite the Complaint to be about Defendants' unprotected "conduct." Those efforts fail, and even if Plaintiffs could allege conduct, it is conduct merely incidental to Defendants' protected speech. Regardless, the Complaint's meager allegations regarding Defendants' "conduct" cannot state a claim. *Fourth*, Plaintiffs' contention that their Complaint does not require this Court to pass on the legality of Qatari law is implausible; Plaintiffs' allegations—taken as true—depend upon Qatari labor policies violating U.S. labor law. *Fifth*, neither the TVPRA nor the New York analogue apply extraterritorially, and Plaintiffs' arguments in response are wholly inconsistent with the text of those statutes. *Finally*, Plaintiffs attempt to shoehorn personal jurisdiction over Memac by ignoring well-recognized requirements for doing so and asserting a new basis for jurisdiction nowhere pled in their Complaint.

## <u>ARGUMENT</u>

I.    **PLAINTIFFS FAIL TO STATE A CLAIM**

  A.  **Plaintiffs Do Not Plead Defendants' "Participation" in a "Venture"**

Plaintiffs' Opposition does not cure their failure to adequately allege each Defendant's "participation" in a TVPRA "venture." To do so, Plaintiffs must allege facts from which to plausibly infer that each Defendant "[took] part or shar[ed] in an enterprise or undertaking that involves, danger, uncertainty, or risk, and potential gain." *Doe I v. Apple Inc.*, 96 F.4th 403, 415 (D.C. Cir. 2024). Despite purportedly adopting this exact standard in their Complaint, Compl. ¶ 64, Plaintiffs now argue that a TVPRA "venture" is "any group of two or more individuals associated in fact." Opp. 6. Plaintiffs are wrong. The association-in-fact definition applies only to criminal sex trafficking under the TVPRA. 18 U.S.C. § 1591(e) (expressly stating that the definitions therein apply only "[i]n this section"). The definition of "venture" in § 1591 does not apply to § 1595. *Apple Inc.*, 96 F.4th at 415 n.5.

  1.  <u>The Complaint Does Not Adequately Plead a TVPRA Venture</u>

Plaintiffs fail to "clearly—or even coherently—define the 'venture.'" *Coubaly v. Cargill, Inc.*, 144 F.4th 343, 348 (D.C. Cir. 2025). Plaintiffs in fact proffer two separate "ventures." MTD 10-13. The first—labeled a "commercial venture"—was comprised solely of "Defendants . . . and Defendants' clients," Opp. 7, and did not include any alleged primary perpetrator of labor abuses. The second "venture"—what Plaintiffs characterize as the "broader World Cup Labor Venture"— (apparently) included the alleged primary perpetrators of labor abuses but is otherwise unbounded and not clearly defined. Compl. ¶ 7. To be sure, neither grouping is properly characterized as a "venture" under the TVPRA because Plaintiffs have "not alleged a factual basis to infer a common purpose, shared profits and risk, or control." *Apple Inc.*, 96 F.4th at 416. But the core deficiency in Plaintiffs' venture allegations is the failure to allege any facts from which to infer that these two

2

separate groups were part of a common enterprise at all, let alone one with shared risks and profits.

Plaintiffs' attempts to paper over this fatal deficiency fail. *First*, Plaintiffs point to the Complaint's conclusory allegation that the Employers "were participants in the Venture, right alongside Defendants." Opp. 7 (citing Compl. ¶¶ 7, 27). This allegation is irredeemably circular and cannot plausibly sustain the inference that Defendants and the Employers were part of the same "venture." The cited allegations in the Complaint provide no support. Paragraph 27 simply lists various alleged participants in the venture with no accompanying factual allegations. Although Paragraph 7 states in conclusory fashion that Defendants and the Employers shared a "mutual client," neither that paragraph nor the remaining 321 paragraphs of the Complaint identify the "mutual client" or explain in any way how Defendants (or Defendants' clients) were connected to the Employers.

*Second*, Plaintiffs argue they can allege a TVPRA venture based not upon any connection to a primary violator, but upon Defendants' contracts with other alleged *beneficiaries* of the venture: the "Qatari Regime" or Qatar Foundation ("QF"). Opp. 7.[1] Case law forecloses that argument. *See* MTD 10-11 (citing cases demonstrating Plaintiffs must allege a common enterprise between Defendants and a primary violator).

*Third*, Plaintiffs contend a "continuous business relationship" suffices because the Complaint alleges a "commercial" venture, Opp. 9-10, but this, too, is circular. A "continuous

---

[1] Even if Plaintiffs adequately allege the "Qatari Regime's" participation in the venture—to be clear, they do not, MTD 12-14—Plaintiffs do not dispute that the Complaint nowhere alleges that the Qatari Embassy, GCO, or Qatari government were primary violators of the TVPRA. And although Plaintiffs assert that QF was "a direct perpetrator of trafficked and forced labor," Compl. ¶ 77, that is "a legal conclusion couched as a factual allegation" that the Court should not credit because the Complaint includes no supporting allegations from which to plausibly infer that QF engaged in criminal violations of the TVPRA. *Drimal v. Tai*, 786 F.3d 219, 223 (2d Cir. 2015). No individual Plaintiff alleges that QF was its direct Employer or that QF had any link to an Employer. *See* Compl. ¶¶ 189-294.

business relationship" as such cannot support a TVPRA beneficiary claim; courts require a "continuous business relationship" *with a primary violator* of the TVPRA. MTD 13. Plaintiffs' own cases recognize this. *See, e.g.*, *G.M. v. Choice Hotels Int'l, Inc.*, 725 F. Supp. 3d 766, 777 (S.D. Ohio 2024) ("[P]articipation in a venture under § 1595 . . . requires at least a showing of a continuous business relationship *between the trafficker and the hotels* such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement." (cleaned up)).[2]

Plaintiffs also cannot show that Defendants shared in any risk, danger, or uncertainty, and potential gain, associated with a venture that allegedly perpetrated labor abuses. Plaintiffs assert that Defendants were "paid millions" for their contractual work. Opp. 8. But *every* commercial relationship involves payment of some sort; payment alone does not transform a contractual relationship into a "venture." The TVPRA requires "something more than engaging in an ordinary buyer-seller transaction": There must be a "shared enterprise between [Defendants] and the [entities] who facilitate forced labor." *Apple*, 96 F.4th at 415. The mere fact that Defendants were paid for contractual services cannot sustain the inference that Defendants "share[d] in the [Employers'] profits and risks." *Id.*

## 2. Defendants Did Not Participate in the Alleged Venture

Faced with these deficiencies, Plaintiffs resort to threadbare allegations that Defendants participated in the alleged venture by lobbying, providing public-relations support, and influencing media coverage of Qatar, including drafting "media articles" and "press releases" responding to "negative media." Opp. 11-12. But these contentions all impermissibly seek to hold Defendants liable for speech protected by the First Amendment. MTD 46-50. Indeed, Plaintiffs' Opposition

---

[2] All emphases added unless noted otherwise.

acknowledges this, conceding Defendants' "'speech acts' are simply evidence of participation" but are not "inculpatory acts triggering liability" in and of themselves. Opp. 46. If that is true, those "speech acts" cannot demonstrate participation in the alleged venture. Plaintiffs are therefore left with meager allegations that Defendants provided "media monitoring" or "crisis communications strategy," Opp. 10, all of which itself is protected by the First Amendment and which cannot support the inference that Defendants participated in the alleged venture. *Infra* § III.

Moreover, absent any well-pleaded allegations of what Defendants actually did, the Complaint does not plausibly support the inference that Defendants participated in the alleged venture. The only examples Plaintiffs cite for the Omnicom Defendants are that Portland arranged a "whitewashing propaganda tour" of migrant workers' housing facilities, that Portland drafted a "knowingly false" response to a Washington Post article about migrant workers, and that Portland set up a "war room" to monitor media about labor abuses at the World Cup. Opp. 10-11, 16, 19. These allegations support only the limited inference that some of Portland's contracted work involved responding to media inquiries regarding alleged labor abuses in Qatar. They do not show that Portland took part in a common enterprise or undertaking with the Employers that violated the TVPRA, let alone one involving shared risks and profits.[3] As for the Ogilvy Defendants, the only example Plaintiffs provide is that OPRW provided lobbying support to "suppress pressure on Qatar to implement labor reforms." Opp. 12. But Plaintiffs' allegations lack any factual support for that conclusory assertion.

---

[3] Plaintiffs' Opposition has no answer to the fact that Portland's direct contractual counterparties—the Qatari Embassy and the GCO—were not even secondary participants in the alleged venture, let alone primary perpetrators of labor abuses. MTD 13-15. The Complaint is therefore missing the crucial link between Portland and the "traffickers or others" "who violated the statute." *Doe v. Red Roof Inns, Inc.*, 21 F.4th 714, 727 (11th Cir. 2021). Nor does anything in the Opposition rectify Plaintiffs' failure to allege Mercury's participation.

Next, Plaintiffs point to routine support services that Omnicom, OPRW, and Ogilvy purportedly provided, without any factual assertions as to how that generic work somehow constitutes participation in the venture. Opp. 11 (alleging that Omnicom provided "back office and enterprise-level resources to Portland and Mercury," such as "tax and accounting" and "legal and compliance" support); *id.* 12-13 (alleging OPRW provided "social media support" because it has a "Social@Ogilvy" platform and Ogilvy provided "global marketing technology" and "data analytics"). These activities are necessarily derivative of Portland's, Mercury's, and Memac's, placing Omnicom, OPRW, and Ogilvy even further removed from the alleged venture—and they at most show routine services. If Plaintiffs were correct, then any third-party service provider to Defendants could be said to have participated in the alleged venture. If an outside law firm helped Portland, Mercury, or Memac with FARA filings, that outside law firm would have participated in a TVPRA venture. Opp. 12. Nothing in the TVPRA or any case law supports such an absurd and dangerous result.

The Court should not credit Plaintiffs' misleading assertion that "Omnicom participated in the Venture by hosting a 2018 Supreme Committee propaganda tour in New York." Opp. 11-12. The underlying allegation is that "*Mercury* hosted an event" for Qatar in an "office *leased by Omnicom*," Compl. ¶ 88, which does not plausibly suggest that Omnicom independently participated in the alleged venture. Plaintiffs also contend that OPRW's FARA disclosures show that it did work in support of Memac's QF contract "related to labor abuses at the World Cup." Opp. 13. But as Defendants have explained, that FARA disclosure on behalf of the State of Qatar— which "is not an alleged venture participant"—cannot establish OPRW's participation. MTD 18 n.6.[4]

---

[4] Plaintiffs contend that FARA materials submitted by an entity purportedly operating as OPRW and referencing a "labor letter" are sufficient to establish participation. To do so, they cite a *different* 2021

Finally, Plaintiffs repeatedly state that Defendants' employees "admitted" to participating in the alleged venture. *E.g.*, Opp. 3, 10, 12, 13, 15. But the key alleged "admissions" are nothing of the sort. *E.g.*, Compl. ¶ 79 (Portland employee LinkedIn post: "The FIFA World Cup Qatar 2022 kicks-off Sunday, following twelve years of active preparation in the State of Qatar. It has been Portland's privilege to work with Qatar for much of this journey."); *id.* ¶ 116 (Memac employee LinkedIn post noting the "Memac Ogilvy Qatar PR team" won awards for "outstanding PR efforts related to the FIFA World Cup"). Plaintiffs' characterization gives away the game: They seek an interpretation of the TVPRA under which anyone who helped Qatar prepare for the World Cup in any way could be said to have "admitted" participation in a TVPRA venture.

### 3. Plaintiffs Cannot Assert Indirect Claims Against Omnicom or Ogilvy Group

Plaintiffs cannot meet the high bar to pierce the corporate veil to assert indirect claims against Omnicom or Ogilvy Group, MTD 19-22, and their Opposition unsurprisingly "forfeited [this] argument," *Grytsyk v. Morales*, 527 F. Supp. 3d 639, 651 (S.D.N.Y. 2021) (Furman, J.).

Plaintiffs instead contend Omnicom and Ogilvy Group had an "agency relationship" with their "respective subsidiaries." Opp. 21. But that argument begins and ends with the conclusory assertion that the subsidiaries "worked under the direction, control, and supervision of their corporate parents." *Id.* "Assertions that one company is the parent of another or conclusory allegations that a parent directed or controlled the subsidiary are insufficient to plead the existence of an agency relationship." *Shcherb v. Angi Homeservices Inc.*, 2020 WL 2571041, at *2 (S.D.N.Y. May 21, 2020).

---

FARA disclosure filed by *Nelson Mullins* on behalf of a *different Qatari entity*. Opp. 16-17 & n.9. That is insufficient.

The Complaint has zero allegations demonstrating the requisite "manifestation of consent" by either the corporate parents or their respective subsidiaries to enter into an agency relationship. *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 175 (2nd Cir. 2012). To the contrary, Plaintiffs repeatedly allege that Omnicom and Ogilvy provided administrative assistance to their subsidiaries—not vice versa—contradicting the conclusory allegation that the subsidiaries were "doing the work" of the corporate parents as "agent[s]." Compl. ¶¶ 107, 143. Courts "routinely dismiss" such deficient allegations. *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 88-89 (S.D.N.Y. 2010) (collecting cases). "To permit otherwise would risk expos[ing] any corporate parent to potential agency liability" and "would ignore separate legal corporate existence." *Shcherb*, 2020 WL 2571041, at *5 (cleaned up).

### B. Plaintiffs Do Not Plead Defendants' Actual or Constructive Knowledge of Any TVPRA Violation as to Plaintiffs

The Complaint nowhere alleges Defendants' actual or constructive knowledge of TVPRA violations as to Plaintiffs. Plaintiffs do not dispute this but instead argue they only need to show Defendants' constructive knowledge of "the venture's general use of trafficked or forced labor." Opp. 22.

That is incorrect. The TVPRA requires knowledge of the specific victim to be held liable as a primary offender, and § 1595(a) requires knowledge of a primary TVPRA violation to be held liable as a beneficiary. MTD 23-24. This conclusion does not require changing the language in § 1595(a) from "an act" to "the act," as Plaintiffs contend. Opp. 24. It follows directly from the statutory text, which provides for a cause of action against a beneficiary who participated in a "venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a). Any "act in violation of this chapter" requires knowledge of the specific victim. *Id.*

Plaintiffs argue that this straightforward interpretation would "severely undermine[]" TVPRA enforcement for "larger trafficking operations" because a defendant could simply "bury its head in the sand with respect to individual victims." Opp. 25. But the TVPRA addresses this concern by permitting liability to attach to a defendant who "knew or *should have known*" about a primary TVPRA offense. 18 U.S.C. § 1595(a). A defendant cannot insulate itself from constructive knowledge by "bury[ing] its head." Opp. 25. Critically, the Opposition also fails to respond to the argument that Plaintiffs' interpretation would make it easier to establish liability for Defendants— who are multiple layers removed from any primary TVPRA offense—than for the primary violators themselves, which is nonsensical. MTD 24.

Moreover, Plaintiffs concede that they must at minimum plausibly allege Defendants' knowledge that "the venture in question has engaged in an act in violation of the TVPRA." Opp. 22 (cleaned up). But the Complaint does not support the inference that the "commercial venture" in which Defendants allegedly participated—as opposed to the "broader" venture involving the Employers—violated the TVPRA, much less that Defendants knew or should have known of any specific TVPRA violations.

Plaintiffs argue that Defendants knew—or should have known—of various publications reporting labor abuses in Qatar. Opp. 22-24. At bottom, that necessarily implies that the venture was responsible for *every single instance* of reported labor abuses related to the World Cup in Qatar and seeks the inference that Defendants' awareness of any such report establishes the requisite constructive knowledge.

Even under the broadest possible understanding of constructive knowledge, such inferences are unwarranted. Plaintiffs insist they have alleged "specific labor trafficking *in the venture*," but even if that were true, nothing in the Complaint sustains the inference that *Defendants*

9

should have known of those specifically alleged abuses. Opp. 26. Plaintiffs' attempt to distinguish the franchisor defendants in *S.J. v. Choice Hotels International Inc.* is thus unavailing. 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020) (at most alleging "knowledge or willful blindness of a general [labor] trafficking problem," but failing to support an inference Defendants "had the requisite knowledge of a specific [labor] trafficking venture").

Plaintiffs' allegations regarding Omnicom's and Ogilvy's knowledge are especially deficient. Plaintiffs argue Omnicom possessed the requisite scienter because Omnicom's Code of Business Conduct states it "assesses and monitors the labor practices of its business partners." Compl. ¶ 162 (cleaned up). (And as for Ogilvy, Plaintiffs merely contend it "is reasonable to infer that Ogilvy does the same." Opp. 22.) These "[s]weeping generalities" are "too attenuated to support an inference" of even constructive knowledge. *Ratha v. Phatthana Seafood Co.*, 35 F. 4th 1159, 1177 (9th Cir. 2022).

### C. Plaintiffs Do Not Plead that Defendants Knowingly Benefitted from Participation in the Alleged Venture

The Complaint does not—and cannot—plausibly allege Defendants' constructive knowledge that they received a benefit "*because of* [their] facilitation" of the underlying TVPRA offenses. *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019). Plaintiffs instead seek the inference that Defendants had "implicit" contractual "incentives to ensure cheap and consistent labor" for the construction of World Cup stadiums. Opp. 29. But the Complaint pleads no facts from which to plausibly draw such an inference, and even if it did, that could not establish Defendants benefitted "because of" their participation.

Plaintiffs retreat to arguing that *Geiss* is an "outlier" and they need only allege that "Defendants were paid for their work" to state a claim. Opp. 27. But courts routinely follow *Geiss*. *See, e.g.*, *Corradino v. Liquidnet Holdings Inc.*, 2021 WL 2853362, at *3 (S.D.N.Y. July 8, 2021);

*Anora v. Oasis Pro. Mgmt. Grp., Ltd.*, 2021 WL 11114531, at *6 (S.D.N.Y. Mar. 19, 2021) *report and recommendation adopted by Anora v. Oasia Pro. Mgmt. Grp., Ltd.*, 2021 WL 11114539 (S.D.N.Y. Aug. 31, 2021); *see also, e.g.*, *Does v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022) (adopting *Geiss* in interpreting identical language in § 1591).

Plaintiffs' argument that requiring a causal nexus "improperly grafts a heightened nexus requirement into § 1595," Opp. 28, misses the mark. The causal requirement flows directly from the statutory text. As Plaintiffs concede, the plain text of § 1595 "ties the knowing benefit to 'participation in a venture.'" *Id.* Nor does Defendants' approach "read[] out the 'should have known' language" in § 1595, Opp. 28; it gives due weight to § 1595(a)'s full statutory text by asking whether there is "*constructive knowledge* of th[e] causal relationship." *Geiss*, 383 F. Supp.3d at 169.

### D.  Plaintiffs Do Not Adequately Plead a Primary Violation of the TVPRA

Plaintiffs misunderstand the relevant case law requiring that they allege a "separate act of recruitment" to state a trafficking claim under § 1590(a). *Ngono v. Owono*, 2024 WL 911797, at *2 (2d Cir. Mar. 4, 2024). They argue "no such requirement exists" to "maintain a § 1589 forced labor claim." Opp. 30. But the requirement for a "separate act of recruitment" applies to § 1590, not § 1589. MTD 29.

Plaintiffs' forced labor claims are likewise deficient. Plaintiffs argue they are not required to "spell out the identities of every wrongdoer in an unlawful venture." Opp. 31. But Plaintiffs fail to identify a *single primary wrongdoer*—not even the parties who allegedly confiscated their passports. Plaintiffs argue "it is logical to assume and infer the Employers took the passports," Opp. 31 n.19, but they make no such factual allegation about any alleged primary wrongdoer.

And even if the Complaint could overcome these deficiencies, Plaintiffs fail to state a claim under each of the four subsections of § 1589(a). MTD 31-32. The Opposition ignores these

arguments entirely. Plaintiffs' limited response is to cite a case where a Magistrate Judge in Colorado upheld "the nearly identical allegations of many of the Plaintiffs in this case." Opp. 31-32 (citing *F.C. v. Jacobs Sols., Inc.*, 2025 WL 1766069, at \*19 (D. Colo. June 26, 2025)). But the defendants in that case failed to argue the forced labor allegations were "not TVPRA violations"; they only "fault[ed] the allegations' specificity." *F.C.*, 2025 WL 1766069, at \*19. Here, Defendants *do* contend that Plaintiffs have not sufficiently alleged TVPRA violations.

### E. Plaintiffs' New York Law Claim Fails

It is undisputed that the elements of Plaintiffs' New York law claim track those of the TVPRA. MTD 34; Opp. 32. Plaintiffs fail to state a claim under New York law for the reasons explained above and in the Motion.

## II. PLAINTIFFS' TVPRA CLAIM, AS PLEADED, VIOLATES ARTICLE III

Plaintiffs fail to allege the requisite traceability under Article III because their purported causal chain involves numerous links, each dependent on rank speculation about the actions of independent actors not before the Court. MTD 34-39. Plaintiffs' only response is that the numerous independent parties identified in the Motion "are not 'third parties' acting 'independently'" because they are "co-venturers" with Defendants. Opp. 34. Plaintiffs offer no support for this theory—nor could they. To meet the "irreducible constitutional minimum of standing," Plaintiffs must allege that their injuries are "fairly traceable to the challenged action *of the defendant[s]*," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up), not a "co-venturer." MTD 39 n.12. In effect, Plaintiffs improperly seek to circumvent Article III's standing requirements because (they contend) they have adequately stated a TVPRA claim. But "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).

Moreover, Plaintiffs fail to address that at least one of the key links in their alleged causal

chain unquestionably involves third parties who are *not* alleged to be venture participants: members of the "international community" who purportedly reduced efforts to pressure Qatar into implementing labor reforms. MTD 35-37. Even under Plaintiffs' (legally unsupported) theory, these third parties break the chain of causation. The Opposition is silent on this point.

Plaintiffs fail to adequately address nearly every standing argument Defendants raised. They offer only the conclusory statement that it is "not speculative to allege, at the pleading stage, that Defendants' efforts helped sustain an environment in which labor abuses could continue." Opp. 36. This is plainly insufficient to satisfy Article III.

*Coubaly* is instructive. There, plaintiffs brought TVPRA beneficiary claims against cocoa importers in connection with labor abuses on cocoa farms. The court held the plaintiffs lacked standing because they did not "clearly allege[] facts demonstrating the causal connection between the Importers' alleged supply chain venture and the Plaintiffs' forced labor." *Coubaly*, 144 F.4th at 348 (cleaned up). Crucial to the court's holding was that the plaintiffs "fail[ed] to clearly—or even coherently—define the 'venture'"; they proffered a venture between only "the Importers themselves, without any individual or entity that injured the Plaintiffs[.]" *Id.* Although they also referenced a broader venture that included cocoa suppliers, the plaintiffs could not "plausibly allege that the Importers or their venture caused the Plaintiffs' individual injuries." *Id.* at 349. The exact same issue undermines Plaintiffs' standing here.

Plaintiffs rely heavily upon *Apple Inc.*, but the D.C. Circuit recently clarified the plaintiffs there had standing because they specifically identified each link in a "chain of multiple intermediaries" connecting each defendant to an alleged primary offender, and therefore plausibly alleged a "direct line [running] from all the defendants, through the suppliers, to all the plaintiffs." *Id.* at 350-51 & n.12. Here, as in *Coubaly*, Plaintiffs fail to "connect the [D]efendants" "either

directly or through intermediaries" to the Employers who allegedly injured Plaintiffs. *Id.* at 350-51; *supra* § I(A)(1).[5]

## III. PLAINTIFFS' CLAIMS SEEK TO IMPOSE LIABILITY FOR FIRST AMENDMENT PROTECTED SPEECH

Plaintiffs' Opposition confirms they seek to hold Defendants liable for protected speech. MTD 46-50. Plaintiffs concede Defendants' public-relations and lobbying efforts generally enjoy First Amendment protection, Defendants' speech relates to matters of public concern, and the First Amendment provides a defense to civil liability claims for such speech. Opp. 45-47. Those concessions resolve this case. *See Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006) (explaining that an as-applied challenge, like Defendants', succeeds where "the facts of a particular case" demonstrate that the "application of a statute" deprives "the individual to whom it was applied of a protected right"). The First Amendment therefore bars Plaintiffs' claims. *See Snyder v. Phelps*, 562 U.S. 443, 461 (2011).

Plaintiffs argue Defendants' speech is not protected by the First Amendment because it is "deliberately misleading." Opp. 45. Even accepting Plaintiffs' allegations as true, it is longstanding black-letter law that "false speech" is not "in a general category that is presumptively unprotected." *United States v. Alvarez*, 567 U.S. 709, 722 (2012); *see N.Y. Times v. Sullivan*, 376 U.S. 254, 271 (1964) ("The constitutional protection does not turn upon 'the truth . . . of the ideas and beliefs which are offered.'"). Plaintiffs' allegations fall nowhere within the narrow categories of false speech excluded from First Amendment protection, such as perjury and fraud. *See Alvarez*, 567 U.S. at 723.

---

[5] Even if Plaintiffs could satisfy Article III by identifying a "close historical or common-law analogue" to the TVPRA, Opp. 35—which Defendants do not concede—that argument is a red herring. *Coubaly*, 144 F.4th at 348 ("Plaintiffs still must plausibly allege facts demonstrating that their personal injuries are fairly traceable to [Defendants'] venture.").

Plaintiffs next argue for an exception for speech "integral to criminal conduct," Opp. 45, but that exception applies only where speech serves as the "'means' by which the defendant" engaged in conduct prohibited by a criminal statute. *United States v. Sergentakis*, 2015 WL 3763988, at *4 (S.D.N.Y. June 15, 2015); *Alvarez*, 567 U.S. at 721. Here, Plaintiffs allege only that *other* venture participants—not Defendants—engaged in criminal violations of the TVPRA and state law. Accordingly, Defendants' speech, which is no way alleged to be the "very vehicle of [a] crime itself," falls well outside this "limited" exception to the First Amendment's broad protections. *United States v. Hilliard*, 2024 WL 3634201, at *2 (2d Cir. Aug. 2, 2024); *see United States v. Stevens*, 559 U.S. 460, 468-69 (2010) (this exception applies to a "well-defined and narrowly limited class[] of speech").

Plaintiffs attempt to skirt the narrow ambit of this speech-integral-to-criminal-conduct exception, arguing it also applies in "non-criminal contexts" where a party violates a "statutory scheme promoting an important public interest." Opp. 45. But courts have long held that speech is often protected even though it violates a law restricting it. *See, e.g.*, *Citizens United v. FEC*, 558 U.S. 310, 372 (2010). Plaintiffs rely primarily on *Universal City Studios, Inc. v. Reimerdes*, 82 F. Supp. 2d 211 (S.D.N.Y. 2000), which quoted *Giboney v. Empire Storage & Ice Co.*'s reasoning that "it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the *conduct* was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." 336 U.S. 490, 502 (1949). But a law's application survives a First Amendment challenge under *Giboney* where its "effect on speech" is "only incidental to its primary effect on conduct." *Expressions Hair Design v. Schneiderman*, 581 U.S. 37, 47 (2017). Indeed, the Second Circuit explained that application of the law at issue in *Universal* survived defendant's First Amendment challenge only because it focused on the "nonspeech

component" of defendant's actions. *See Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 454-58 (2d Cir. 2001).

Here, Plaintiffs' claims hinge on Defendants' alleged public-relations and lobbying efforts to "minimize, obfuscate, lie about, or stop reporting" regarding purported labor abuses. Compl. ¶¶ 305, 319. These allegations allege liability arising out of protected speech, not unexpressive conduct.

Plaintiffs' Opposition attempts to rewrite the Complaint to highlight those few, incidental instances in which it purportedly mentions "conduct." Opp. 45-46. But all the alleged "conduct"—"monitoring" press reporting, "embedding" employees with their clients, setting up a "war room," managing a "propaganda tour," and "draft[ing] . . . responses" to negative reporting—is protected by the First Amendment and, in any event, related to Defendants' protected speech. *Id.* (explaining that this 'conduct' was in support of Defendants' purported efforts to "lie, dissemble, minimize, and misrepresent" the alleged labor abuses through public-relations and lobbying work). Thus, Plaintiffs' claims primarily—not incidentally—seek to impose liability for speech, not conduct, in violation of Defendants' First Amendment rights. In any event, these stripped-down allegations cannot remotely support the inference that Defendants took part in a common enterprise involving shared risks and profits with the Employers. *Supra* § I(A)(2).

That Plaintiffs have located no case in which a court has dismissed TVPRA claims on First Amendment grounds is unsurprising. Opp. 46. Plaintiffs' outlandish theory of liability—that public-relations and lobbying firms should be held liable for engaging in protected speech—stretches the TVPRA beyond recognition. There are no First Amendment cases on this issue because no plaintiff has previously advanced such constitutionally impermissible claims.

## IV.  PLAINTIFFS' CLAIMS QUESTION THE VALIDITY OF QATAR'S OFFICIAL ACTS AND ARE THEREFORE BARRED BY THE ACT OF STATE DOCTRINE

Plaintiffs have no real answer to Defendants' argument that Plaintiffs' allegations—taken as true—require this Court to "question the 'legality'" of Qatar's official acts by determining whether those acts are criminal violations of the TVPRA and state law. *World Wide Mins., Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1165 (D.C. Cir. 2002); *Kashef v. BNP Paribas S.A.*, 925 F.3d 53, 60 (2d Cir. 2019). Plaintiffs again attempt to rewrite their Complaint, arguing that they do not challenge the "official act[s] of a foreign sovereign" because "Plaintiffs' Employers' acts are not the same as the acts of the Qatari Regime." Opp. 43-44.

The Opposition contradicts this argument. Plaintiffs insist not just that Qatari "Regime entities[] were Venture participants" but also that they were "direct perpetrator[s] of trafficked and forced labor." Opp. 18. To start, these are conclusory allegations, providing no factual support for the idea that the regime itself participated in any alleged venture. *Supra* § I(A); MTD 10-15. But Plaintiffs cannot have it both ways:  If the Court credits these allegations, then the Complaint necessarily challenges the "official act[s] of a foreign sovereign." Plaintiffs allege (in conclusory fashion) not just that the *kafala* system—Qatar's "officially sanctioned policies," *Kashef*, 925 F.3d at 61—granted "broad and exploitative powers over migrant workers," Compl. ¶¶ 31-44, but also that Qatar "slowed promulgation of progressive labor reforms" to "continue to use trafficked and forced labor in preparation to host the World Cup," and hired Defendants to assist in that alleged effort. *Id.* ¶ 6. These allegations challenge the "official act[s] of a foreign sovereign." *Cf. Kashef*, 925 F.3d at 61 (holding that the act of state doctrine did not apply because there, unlike here, the regime's acts "blatantly violate[d] [the country's] own laws").

Thus, to hold Defendants liable, Plaintiffs' allegations require the Court to determine that the official acts of what Plaintiffs label the "Qatari Regime" were in fact TVPRA violations. The act of state doctrine therefore requires dismissal. MTD 44-46.

## V. NEITHER THE TVPRA NOR NEW YORK LAW APPLIES EXTRATERRITORIALLY, AND PLAINTIFFS HAVE NOT ALLEGED DOMESTIC APPLICATIONS

There is no "clear, affirmative indication," *Nestlé USA, Inc. v. Doe*, 593 U.S. 628, 632 (2021), in the text of § 1595 rebutting the presumption against extraterritoriality, MTD 40-42. Further, the "focus," *RJR Nabisco v. European Cmty.*, 579 U.S. 325, 337 (2016), of § 1595 is on providing a "victim of a violation" of the TVPRA's criminal provisions with a civil remedy, 18 U.S.C. § 1595(a), and all the alleged conduct related to that focus—labor abuses and labor trafficking—occurred abroad, MTD 42.

Plaintiffs have no answer to these textual arguments and instead contend that this Court should follow *Roe v. Howard*, 917 F.3d 229, 239-44 (4th Cir. 2019), which concluded § 1595 applies extraterritorially. Opp. 36-41. But this Court is not bound by *Howard*, nor should it follow *Howard*'s flawed application of Supreme Court precedent and well-established canons of statutory interpretation. *First*, the Supreme Court has rejected the Fourth Circuit's (and Plaintiffs') reasoning that inclusion of "extraterritorial predicates" in § 1595 provides a "clear, affirmative indication" that the statute provides a civil remedy for foreign conduct. Opp. 37-38 (quoting *Howard*, 917 F.3d at 242). Such reasoning "fails to appreciate that the presumption against extraterritoriality must be applied separately to both [a statute's] substantive prohibitions and its private right of action." *RJR Nabisco*, 579 U.S. at 350. Indeed, as to private rights of action for foreign conduct, the Supreme Court noted that the "need to enforce the presumption [against extraterritoriality] is at its apex," in part because "the check imposed by prosecutorial discretion" in criminal cases is absent. *Id.* at 346-48. Plaintiffs ignore this distinction, and the Fourth Circuit's

attempt to brush it aside is unpersuasive. *See Mia v. Kimberly-Clark Corp.*, 2025 WL 752564, at *7 (D.D.C. Mar. 10, 2025) (explaining how *Howard* "erroneously reasoned that § 1595's extraterritorial effect flows directly from that of the substantive criminal prohibitions in the TVPRA" (cleaned up)).[6]

*Second*, Plaintiffs' contention that § 1596's extraterritoriality clause makes clear that § 1595 applies extraterritorially, Opp. 38, turns textualism on its head, MTD 41-42. As Plaintiffs concede, "[l]ogically, all Congress had to do to extend § 1595's civil remedy extraterritorially" was to include § 1595 in § 1596. Opp. 38. That Congress included other TVPRA provisions in § 1596 but failed to include § 1595 is substantial proof that it did not intend to provide extraterritorial jurisdiction over the civil-remedy provision. MTD 41-42. And where, as here, Congress provided for "some extraterritorial application" of other TVPRA provisions in § 1596, but not for § 1595, "the presumption against extraterritoriality operates to limit that provision to its terms." *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 265 (2010).

*Third*, Plaintiffs' reliance on legislative history, Opp. 39-40, ignores that courts may consider such evidence only if the statute's "words are not clear." *Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 51 (2d Cir. 2025) (explaining that if the words are clear, "we construe the statute according to their plain meaning"). Here, § 1595's text is unambiguous, meaning legislative history and statements by individual legislators can play no role in its interpretation, *id.*; *In re Terrorist Attacks on Sept. 11, 2001*, 657 F. Supp. 3d 311, 329 n.9 (S.D.N.Y. 2023).

Plaintiffs alternatively argue that they have alleged domestic violations of the TVPRA. Opp. 41-42. But to make this determination, courts must look "to the statute's 'focus.'" *RJR*

---

[6] Plaintiffs' other cited cases are neither persuasive nor binding on this court because they merely parrot *Howard*'s flawed reasoning, rely on non-adversarial party concessions that § 1595 applies extraterritorially, or fail to address *RJR Nabisco*'s controlling framework. Opp. 40-41.

*Nabisco*, 579 U.S. at 337. Here, § 1595's focus is on "the underlying criminal violations and not on any benefits that accrue from them, because § 1595 provides a civil remedy to a victim of a violation of the TVPRA—it does not create a new violation merely for benefitting from other violations." *Mia*, 2025 WL 752564, at *8 (cleaned up). Defendants know of no cases holding otherwise.[7] And here, because all the alleged underlying criminal violations occurred in Qatar, Plaintiffs have failed to allege domestic application of § 1595. *E.g.*, Compl. ¶ 7 (employers forced "workers to work inhumane hours" "in Qatar"); *id.* ¶ 68 ("labor abuses" "in Qatar"); *id.* ¶ 98 ("trafficked and forced labor in Qatar[]"); *id.* ¶ 170 ("human trafficking in Qatar"); *id.* ¶ 189-294 (each Plaintiff was subject to forced labor "in Qatar").

Finally, Plaintiffs concede that their state-law claims arise under provisions of New York law that do not apply extraterritorially. Opp. 42-43; MTD 42-44. Plaintiffs' contention that they seek only a domestic application of state law fails for the same reasons explained above. Because all the alleged violations of N.Y. Penal Law § 135.35 occurred in Qatar, Plaintiffs have failed to allege a domestic application of state law.

## VI. RESTITUTION IS NOT AVAILABLE UNDER § 1593 FOR § 1595 CIVIL REMEDY CLAIMS

Plaintiffs cannot seriously dispute that the plain text of the TVPRA's restitution provision expressly applies only in criminal proceedings. 18 U.S.C. § 1593 (providing restitution to "the victim," which the TVPRA defines as "the individual harmed as a result of a *crime* under this chapter," for "any *offense* under this chapter"); *W.K. v. Red Roof Inns, Inc.*, 2024 WL 2892322, at *2 (N.D. Ga. June 10, 2024) (describing § 1593 as the TVPRA's "*criminal* restitution provision")

---

[7] Plaintiffs cite *Rodriguez v. Pan Am. Health Org.*, 29 F.4th 706, 716 (D.C. Cir. 2022). Opp. 49-50. But *Rodriguez* did not address whether the TVPRA applies domestically or extraterritorially. *See* 29 F.4th at 716.

Plaintiffs cite cases concluding otherwise. Opp. 53. But those cases are not binding on this Court and are wrongly decided because they ignore § 1593's definition of "victim" or fail to analyze whether § 1593 authorizes restitution in civil cases.

## VII.  THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANT MEMAC

This Court lacks personal jurisdiction over Memac, and Plaintiffs' contrary arguments fail under binding precedent requiring that "at least one element" of their claims "arise[]" from Memac's contacts with New York. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 169 (2d Cir. 2013); MTD 50-54.

Plaintiffs contend they need only show that their claim is not "completely unmoored" from Defendant's New York contacts. Opp. 49. But the case they cite expressly relied on *Licci* for this language and did not overrule *Licci*'s central teaching: At least one element of the plaintiff's claim must arise from the defendant's contacts with the State. *See Peterson v. Bank WMarkazi*, 121 F.4th 983, 1004 (2d Cir. 2024). Plaintiffs' "completely unmoored" standard would eviscerate the binding limits on specific jurisdiction.

Plaintiffs allege that Memac "collaborat[ed]" with Ogilvy and OPRW to "fulfill its contract" with QF. MTD 51. But that contract nowhere sustains a reasonable inference that Memac worked on issues related to labor abuse in Qatar, rather than the World Cup more broadly. Compl. ¶ 111. That is insufficient to raise a factual question and fails to show that any element of Plaintiffs' claims arises from Memac's New York contacts. *Licci*, 732 F.3d at 169.

Plaintiffs concede they do not assert personal jurisdiction over Memac based on a veil-piercing theory. Opp. 49-50. Instead, Plaintiffs contend that Memac engaged in "conduct in New York via an agent." Opp. 50. But Plaintiffs failed to allege an agency relationship sufficient to satisfy New York law. They do not allege Memac as "principal" "control[led]" Ogilvy or OPRW as agents. *Ridge Clearing & Outsourcing Sols., Inc. v. Khashoggi*, 2011 WL 3586455, at *7

(S.D.N.Y. Aug. 12, 2011). If anything, Plaintiffs have attempted but failed to plausibly allege the opposite—namely, that Memac's corporate parent controlled it. *See supra* § I(A)(3).

Nor have Plaintiffs sufficiently alleged an informal "agency relationship" contemplated by the cases they cite. Even if such an informal agency relationship existed (it does not), the cases they cite analyze whether the court had *general* jurisdiction. *See First Am. Corp. v. Price Waterhouse LLP*, 988 F. Supp. 353, 363 (S.D.N.Y. 1997); *Rocker Mgmt., L.L.C. v. Lernout & Hauspie Speech Prods. N.V.*, 2005 WL 3658006, at *7-8 (D.N.J. June 7, 2005). Plaintiffs have not argued this Court has *general* jurisdiction over Memac and thus have forfeited that argument. And for the reasons explained above, none of the elements of Plaintiffs' claims arise from the purported relationship between Memac and the New York-based entities.

Apparently recognizing that this Court lacks specific personal jurisdiction over Memac under New York law, Plaintiffs invoke Federal Rule of Civil Procedure 4(k)(2). Opp. 50-52. But the Complaint only alleges "specific personal jurisdiction" over Memac. Compl. ¶ 17. That forecloses any argument under Rule 4(k)(2) because specific jurisdiction is applicable only when a Plaintiff alleges jurisdiction under Rule 4(k)(1). *See Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 11-12 (2025). *Fuld* was available to Plaintiffs well before the court's deadline for amending their Complaint, ECF No. 60, but Plaintiffs failed to amend. This Court should reject Plaintiffs attempt to amend their jurisdictional allegations in their Opposition.

Regardless, exercising personal jurisdiction over Memac pursuant to Rule 4(k)(2) would not comport with due process.[8] Plaintiffs do not allege conduct implicating "important foreign

---

[8] Any argument that Defendants waived a Fifth Amendment Due Process argument by not raising a Fourteenth Amendment Due Process argument in the Motion, Opp. 52, fails. The Opposition expressly argues that personal jurisdiction comports with the Fifth Amendment's Due Process Clause; Defendants are permitted to respond to that argument in their reply. *See Crystal IS, Inc. v. Nitride Semiconductors Co.*, 2023 WL 2726702, at *3 n.5 (N.D.N.Y. Mar. 31, 2023) (citing cases).

policy concerns." *Fuld*, 606 U.S. at 18. Unlike the statute in *Fuld*, Congress did not provide for extraterritorial application of civil claims brought under § 1595, thereby reflecting its "considered judgment" to limit § 1595 claims to domestic conduct and foreclosing any argument that § 1595 implicates "important foreign policy concerns." *Fuld*, 606 U.S. at 18; *supra* § V.[9] Plaintiffs do not even argue their claims are connected to "conduct closely related to the United States." *Id.*; Opp. 51-52. And in any event, the conduct that is the focus of § 1595—violations of the TVPRA's criminal provisions—all occurred abroad in Qatar. *Supra* § V.

## **<u>CONCLUSION</u>**

The Court should dismiss the Complaint with prejudice.

---

[9] Plaintiffs have not, nor could, argue their state-law claim implicates foreign policy concerns.

Dated: October 7, 2025

**DAVIS+GILBERT LLP**

By: _/s/ James R. Levine_
    James R. Levine
    Gregg A. Gilman
    William S. Kukin
    1675 Broadway
    New York, New York 10019
    (212) 468-4800
    jlevine@dglaw.com
    ggilman@dglaw.com
    wkukin@dglaw.com

    *Attorneys for Defendants Omnicom Group Inc. and Portland PR Inc.*

By: _/s/ Steven P. Lehotsky_
    Steven P. Lehotsky*
    Mary Elizabeth Miller*
    Lehotsky Keller Cohn LLP
    200 Massachusetts Ave., NW
    Washington, D.C. 20001
    steve@lkcfirm.com
    mary@lkcfirm.com

    Mark M. Rothrock*
    Lehotsky Keller Cohn LLP
    8513 Caldbeck Drive
    Raleigh, NC 27615
    mark@lkcfirm.com

    * Admitted *Pro hac vice*

    *Attorneys for Defendants Ogilvy Group, LLC, Ogilvy Public Relations Worldwide LLC, and Memac Ogilvy & Mather LLC*

## <u>CERTIFICATION OF WORD COUNT</u>

I, James R. Levine, an attorney duly admitted to practice law in this Court, hereby certify that this Memorandum of Law complies with the word count limit set forth the Court's Order dated July 22, 2025 (ECF No. 53), because it contains 6,942 words, excluding the parts exempted by Section 4(C) of the Court's Individual Rules and Practices in Civil Cases and Local Civil Rule 7.1(c). In preparing this certification, I have relied on the word count of the word-processing system used to prepare this Memorandum.

Dated: New York, New York
      October 8, 2025

By:  */s/ James R. Levine*

**DAVIS+GILBERT LLP**
James R. Levine
Gregg A. Gilman
William S. Kukin
1675 Broadway
New York, New York 10019
(212) 468-4800
jlevine@dglaw.com
ggilman@dglaw.com
wkukin@dglaw.com

*Attorneys for Defendants Omnicom Group Inc. and Portland PR, Inc.*