**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

<table>
<tr><td>A.A., A.B., A.D., A.G., A.P., A.S., A.V., Al.C., Am.P., An.A., An.D., Ar.A., Ari.R., Arn.R., B.D., B.M., B.T., C.C., C.S., C.V., D.D.R., D.L., E.A., E.C., E.D.C., E.D.L., E.G., E.L., E.M., Ed.T., En.C., Er.T., F.B., F.S., F.T., G.A., G.D.L., G.G., G.O., G.S., G.T., H.V., I.E., J.A., J.B., J.C., J.D.C., J.F., J.J.G., J.L., J.N.B., J.O., J.P., J.S., J.T., Ji.T., Jo.B., L.G., L.L., L.N., L.P., L.V., M.A., M.D.L., M.G., M.R., M.S., N.C., P.C., R.A., R.B., R.B.E., R.C., R.D., R.E., R.F., R.I., R.L., R.N., R.P., R.S., R.T., R.V., Ra.D., Ra.G., Ra.L., Ra.V., Re.C., Re.D., Rh.P., Ri.C., Ri.O., Ro.D., Ro.L., Ro.P., Rod.O., Rog.B., Rol.P., Rom.B., Ron.O., S.N., T.L., V.A., V.B., V.M., and W.B.,<br><br>Plaintiffs,<br><br>v.<br><br>OMNICOM GROUP INC., PORTLAND PR INC., OGILVY GROUP, LLC, OGILVY PUBLIC RELATIONS WORLDWIDE LLC, and MEMAC OGILVY & MATHER LLC,<br><br>Defendants.</td><td>Case No.: 1:25-cv-03389<br><br><br><br><br>ORAL ARGUMENT REQUESTED</td></tr>
</table>

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO CERTIFY ORDER (ECF No. 72) FOR INTERLOCUTORY APPEAL</u>

**DAVIS+GILBERT LLP**
James R. Levine
Gregg A. Gilman
William S. Kukin
Dana Z. Horowitz
1675 Broadway
New York, New York 10019
(212) 468-4800
jlevine@dglaw.com
ggilman@dglaw.com
wkukin@dglaw.com
dhorowitz@dglaw.com

*Attorneys for Defendant Portland PR Inc.*

Steven P. Lehotsky*
Mary Elizabeth Miller*
Robert B. Dunteman*
Lehotsky Keller Cohn LLP
200 Massachusetts Avenue, NW, Suite 700
Washington, D.C. 20001
steve@lkcfirm.com

Mark M. Rothrock*
Lehotsky Keller Cohn LLP
8513 Caldbeck Drive
Raleigh, NC 27615

\* Admitted *Pro hac vice*

*Attorneys for Defendants Ogilvy Group, LLC and Ogilvy Public Relations Worldwide LLC*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................ 1

BACKGROUND .............................................................................................................................. 3

ARGUMENT ................................................................................................................................... 7

      I.     Whether 18 U.S.C. § 1595 applies extraterritorially is a controlling question of law. ................................................................................................. 8

      II.    There is substantial ground for difference of opinion. .................................... 12

      III.   Interlocutory appeal may materially advance the termination of this litigation ....................................................................................................... 17

CONCLUSION ............................................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abafita v. Aldukhan*,
   2019 WL 4409472 (S.D.N.Y. Sept. 16, 2019)................................................................13

*Abitron Austria GmbH v. Hetronic Int'l, Inc.*,
   600 U.S. 412 (2023).........................................................................................................5

*Adhikari v. Kellogg Brown & Root, Inc.*,
   845 F.3d 184 (5th Cir. 2017) .....................................................................................11, 13

*Am. Geophysical Union v. Texaco Inc.*,
   802 F. Supp. 1 (S.D.N.Y.1992)......................................................................................18

*APCC Servs., Inc. v. AT & T Corp.*,
   297 F. Supp. 2d 101 (D.D.C. 2003)................................................................................17

*Atl. City Elec. Co. v. Gen. Elec. Co.*,
   207 F. Supp. 613 (S.D.N.Y. 1962)..................................................................................16

*Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*,
   2014 WL 1881075 (S.D.N.Y. May 9, 2014) .....................................................................8

*B. v. Jacobs Sols. Inc.*,
   25-cv-03067 (D. Colo. Sept. 30, 2025)...........................................................................10

*Balintulo v. Daimler AG*,
   727 F.3d 174 (2d Cir. 2013)..............................................................................................8

*C. v. Jacobs Sols. Inc.*,
   25-cv-00274 (D. Colo. Jan. 27, 2025) ............................................................................10

*Capitol Recs., LLC v. Vimeo, LLC*,
   972 F. Supp. 2d 537 (S.D.N.Y. 2013)..................................................................12, 15, 18

*City of New York v. Beretta U.S.A. Corp.*,
   524 F.3d 384 (2d Cir. 2008)..............................................................................................9

*Consub Delaware LLC v. Schahin Engenharia Limitada*,
   476 F. Supp. 2d 305 (S.D.N.Y. 2007)..............................................................................15

*In re Currency Conversion Fee Antitrust Litig.*,
   2005 WL 1871012 (S.D.N.Y. Aug. 9, 2005).....................................................................7

*Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*,
    2012 WL 2952929 (S.D.N.Y. July 18, 2012) ...............................................................7

*Doe I v. Apple Inc.*,
    2021 WL 5774224 (D.D.C. Nov. 2, 2021) ...................................................11, 12, 16

*Eur. Cmty. v. RJR Nabisco, Inc.*,
    2011 WL 843957 (E.D.N.Y. March 8, 2011) .............................................................11

*Eur. Cmty. v. RJR Nabisco, Inc.*,
    764 F.3d 129 (2d Cir. 2014)......................................................................................11

*Eur. Cmty. v. RJR Nabisco, Inc.*,
    783 F.3d 123 (2d Cir. 2015)......................................................................................11

*F.C. v. Jacobs Sols. Inc.*,
    790 F. Supp. 3d 1158 (D. Colo. 2025)......................................................................14

*Figueiredo Ferraz Consultoria E Engenharia De Projeto Ltda. v. Republic of
    Peru*,
    2009 WL 5177977 (S.D.N.Y. Dec. 15, 2009) ............................................................8

*In re Flor*,
    79 F.3d 281 (2d Cir. 1996)........................................................................................15

*In re Gen. Motors LLC Ignition Switch Litig.*,
    427 F. Supp. 3d 374 (S.D.N.Y. 2019)...........................................................8, 16, 18

*Islam v. Lyft, Inc.*,
    2021 WL 2651653 (S.D.N.Y. June 28, 2021) ..........................................................10

*Kiobel v. Royal Dutch Petroleum Co.*,
    569 U.S. 108 (2013)....................................................................................................9

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in
    Amministrazione Straordinaria*,
    921 F.2d 21 (2d Cir. 1990).........................................................................................9

*Lun v. Milwaukee Elec. Tool Corp.*,
    2025 WL 3443536 (E.D. Wis. Dec. 1, 2025) .......................................10, 12, 14, 15

*Mia v. Kimberly-Clark Corp.*,
    2025 WL 752564 (D.D.C. March 10, 2025)..............................................12, 14, 15

*Mohawk Indus., Inc. v. Carpenter*,
    558 U.S. 100 (2009)....................................................................................................8

*Nestlé USA, Inc. v. Doe*,
    593 U.S. 628 (2021)...............................................................................................1, 5, 9

*New York v. Arm or Ally, LLC*,
    2024 WL 2270351 (S.D.N.Y. May 20, 2024) ................................................ *passim*

*Pavlovich v. Gaiman*,
    2025 WL 2819372 (W.D. Wis. Oct. 3, 2025).......................................11, 12, 14, 16

*Pavlovich v. Palmer*,
    2026 WL 353496 (D. Mass. Feb. 6, 2026) ................................................11, 14, 16

*Pen Am. Ctr., Inc. v. Trump*,
    2020 WL 5836419 (S.D.N.Y. Oct. 1, 2020)....................................................15

*Ratha v. Phatthana Seafood Co.*,
    35 F.4th 1159 (9th Cir. 2022) .........................................................................11, 16

*Reese v. BP Expl. (Alaska) Inc.*,
    643 F.3d 681 (9th Cir. 2011) ..........................................................................15, 17

*RJR Nabisco, Inc. v. Eur. Cmty.*,
    579 U.S. 325 (2016).....................................................................................11, 13, 14

*Roe v. Howard*,
    917 F.3d 229 (4th Cir. 2019) ..........................................................................5, 13

*SEC v. Coinbase, Inc.*,
    761 F. Supp. 3d 702 (S.D.N.Y. 2025).........................................................9, 15, 18

*In re Trump*,
    874 F.3d 948 (6th Cir. 2017) ..........................................................................17

*United States v. Wells Fargo Bank, N.A.*,
    2015 WL 14072740 (S.D.N.Y. Nov. 2, 2015)...............................................19

**Statutes**

18 U.S.C. § 1581............................................................................................................5

18 U.S.C. § 1583............................................................................................................5

18 U.S.C. § 1584............................................................................................................5

18 U.S.C. § 1589.......................................................................................................4, 5

18 U.S.C. § 1590.......................................................................................................4, 5

18 U.S.C. § 1591............................................................................................................5

18 U.S.C. § 1595 .................................................................................................................4

18 U.S.C. § 1596 .............................................................................................................5, 6

28 U.S.C. § 1292 .............................................................................................................1, 7

**Other Authorities**

Wright & Miller, Criteria for Permissive Appeal, 16 Fed. Prac. & Proc. § 3930
    (3d ed.) .................................................................................................................16, 17

Fed. R. Civ. P. 35 .............................................................................................................18

*Mia v. Kimberly Clark Corp.*, No. 25-7046, Oral Argument (D.C. Cir. Jan. 20,
    2026) (Millett, Katsas, Rao, JJ.), available at https://perma.cc/RL2H-K5ZS .........................16

## INTRODUCTION

This case is premised on an expansive and unprecedented legal theory, seeking to hold Defendants—a group of public relations and lobbying firms—liable under federal law for alleged labor abuses perpetrated by foreign employers (who were not Defendants' clients) against foreign plaintiffs (who have no ties to the United States) for work conducted in a foreign country under foreign labor laws. Defendants moved to dismiss, which the Court denied in part, including by determining that Plaintiffs' civil cause of action under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595 *et seq.*, applies extraterritorially and can proceed. ECF No. 72 (the "Order"). That determination widens the growing conflict in authority on the extraterritorial reach of the TVPRA's civil cause of action, which in turn has significant consequences for this case and like cases around the country. The Fourth Circuit recently addressed the question, and three other courts of appeals are currently considering the issue. The Second Circuit should as well—before this case proceeds into extensive, time-consuming, and costly discovery involving over a hundred parties and spanning multiple continents.

The Court should certify its Order for interlocutory appeal under 28 U.S.C. § 1292(b). An order may be appealed under § 1292(b) if it "[1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and that [3] an immediate appeal from the order may materially advance the ultimate termination of the litigation." The Court's Order meets those three factors.

*First*, the Order decides a dispositive, purely legal question. Because federal laws are presumed to apply only domestically, courts must determine "whether the statute gives a clear, affirmative indication" that rebuts the presumption against extraterritorial application. *Nestlé USA, Inc. v. Doe*, 593 U.S. 628, 632 (2021). That determination is a question of statutory interpretation

(a quintessential question of law), and it remains undecided by the Supreme Court of the United States and the Second Circuit. That question is also controlling because reversal by the Second Circuit on the extraterritoriality question ends this case.

*Second*, there is substantial ground for difference of opinion as to the extraterritorial reach of the TVPRA's civil cause of action. Federal courts across the country disagree on how to properly interpret the statute's text, namely whether the TVPRA's separate criminal predicates provide a clear, affirmative indication sufficient to rebut the presumption against extraterritoriality. The Fourth Circuit and the District of Colorado have concluded § 1595 applies extraterritorially. But other district courts have reached the opposite conclusion. Appeals in the D.C. Circuit, Seventh Circuit, and First Circuit are currently pending. In addition to the split of authority, courts analyzing the question have made clear that application of the Supreme Court's extraterritoriality framework is particularly difficult with respect to the TVPRA. And there is no doubt that the issue is important and undecided in the Second Circuit. It calls out for appellate review. The fact that another district court denied certification on this question does not mean this Court should deny certification here. Because plaintiffs in that case *conceded* the first and third factors were satisfied, the court's decision was based entirely on its conclusion that there was no substantial ground for a difference of opinion. And in reaching that conclusion, the court not only applied the wrong legal standard, but it altogether ignored two recent, reasoned district court opinions that illustrate the exact disagreement sufficient to justify interlocutory review. And in any event, courts in this district routinely recognize that interlocutory appeal may be appropriate, even if the court does not agree that all three factors are established.

*Finally*, interlocutory appeal advances the termination of this litigation because resolving that question in Defendants' favor ends the case—saving the Court, the 100 plus parties, and

numerous other third parties the substantial resources and time from the inevitable protracted discovery across multiple continents. Notably, the Court need not speculate as to this final factor: Nearly identical suits (brought by Plaintiffs' counsel) are currently pending in the District of Colorado against other defendants affiliated with the World Cup. In one of those actions—which involves less than half the plaintiffs in this case—the parties have participated in at least five weeks of depositions in the Philippines, conducted with multiple translators at each deposition; disputed and confronted logistical challenges regarding medical examinations; and disputed visa processes and immigration issues. This case is set to follow a similar playbook—but with over twice as many plaintiffs. Certification allows the parties and this Court to avoid those potentially unnecessary burdens.

Given the importance of this question and the significant practical consequences if the Second Circuit decides, as a matter of first impression, that the TVPRA's civil cause of action does not apply extraterritorially, Defendants seek a corresponding stay of litigation in this Court. To minimize any delay, Defendants propose that the parties brief certification on an expedited basis in this Court. Defendants are also amenable (and will request) expedited briefing and argument in the Second Circuit, should the case proceed on certified appeal.

## BACKGROUND

The Court is familiar with Plaintiffs' allegations in this case, but Defendants briefly summarize the factual background. Plaintiffs are 106 individuals residing in the Philippines with no ties to the United States, who were previously employed by foreign companies to complete infrastructure projects in the lead up to the 2022 FIFA World Cup in Qatar. ECF No. 1 ("Compl.") ¶¶ 1-12. Plaintiffs allege Qatar's migrant-labor laws—known as the "*kafala*" or "sponsorship" system—"made migrant workers vulnerable by granting Qatari employers broad and exploitative powers over migrant workers, allowing them to evade accountability for trafficking and forced

3

labor abuses, and leaving workers beholden to debt and in constant fear of retaliation." Compl. ¶¶ 31-32. Specifically, under the *kafala* system, "migrant workers' visas were tied to their employers, which left workers dependent on their employers for their legal residency and status in the country" and "for housing and food." *Id*. Workers were also allegedly required to "obtain their employer's permission to change jobs." *Id*. ¶ 36. Plaintiffs allege that under Qatar's labor laws and practices, "migrant workers' physical movement and freedom were controlled by their employers." *Id*. ¶ 40. Plaintiffs contend they were trafficked to Qatar under false pretenses, where their employers in Qatar exercised that control and committed such labor abuses, including by "t[aking] passports, trapping [them] in Qatar, and then forc[ing] [them] to work inhumane hours in Qatar's scorching heat while enduring squalid living and dangerous working conditions." *Id*. ¶¶ 3, 7, 28.

Despite no connection to the United States and no apparent ability to come to the United States to litigate this case, Plaintiffs bring claims here against Defendants under federal law. The TVPRA criminalizes human trafficking crimes, including forced labor and involuntary servitude. *See, e.g.*, 18 U.S.C. §§ 1589, 1590. The Act also provides a civil remedy for an injured private plaintiff to bring a civil action against a defendant who "knowingly benefits" "financially or by receiving anything of value from participation in a venture which [the defendant] knew or should have known has engaged" in a primary, criminal violation of the TVPRA. 18 U.S.C. § 1595(a). Plaintiffs principally allege their direct employers engaged in primary, criminal violations of the TVPRA (§§ 1589 and 1590), and that Defendants are civilly liable under Section 1595(a) because they "knowingly benefit[ed]" from those primary violations by participating in the so-called "World Cup Labor Venture." Compl. ¶¶ 5, 27, 64, 185-187.

Defendants moved to dismiss Plaintiffs' claims on multiple grounds, including that Plaintiffs' civil cause of action under the TVPRA does not apply extraterritorially. Defendants

4

argued that Section 1595 contains no language suggesting extraterritorial application, let alone a "clear, affirmative indication" to rebut the presumption that the statute only applies domestically. *Nestlé*, 593 U.S. at 632; *see also Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 418 (2023) (requiring an "unmistakable instruction that the provision is extraterritorial"); ECF No. 55 at 40. And while a different provision—§ 1596—grants federal courts "extraterritorial jurisdiction over" specifically listed criminal provisions of the TVPRA (sections 1581, 1583, 1584, 1589, 1590, and 1591) in certain circumstances, it omits any reference to § 1595. ECF No. 55 at 41. Section 1596's text and structure otherwise confirm it is focused solely on criminal applications of the TVPRA and does not extend extraterritorial application to the TVPRA's civil cause of action.

This Court disagreed in relevant part. Order at 34. Despite recognizing that Defendants' arguments had "some force," the Court ultimately "join[ed] the Fourth Circuit and several other courts in concluding that Section 1595 applies extraterritorially, but only to the extent that its predicate criminal TVPRA violations also have extraterritorial application." *Id.* Although this Court acknowledged that § 1595 "does not contain any express language delineating its geographical scope," it reasoned that such an express statement "is not required." *Id.* And here, the Court reasoned, the presumption against extraterritoriality is rebutted where the statute includes predicate offenses that *do* apply extraterritorially (either by their own terms or under § 1596). *Id.* at 34-35. Congress's "incorporation" of these extraterritorial predicates into § 1595 gives a "clear, affirmative indication" that the TVPRA's civil cause of action provides a remedy for foreign conduct, "at least to the extent that the particular predicate offense supporting a specific claim applies extraterritorially." *Id.* at 35 (quoting *Roe v. Howard*, 917 F.3d 229, 242 (4th Cir. 2019)).

5

The Court then considered whether the two predicate offenses underlying Plaintiffs' claims—Sections 1589 and 1590—applied extraterritorially. Those sections apply extraterritorially only if the "alleged offender" is "a national of the United States" or otherwise "present in the United States." § 1596(a). The Court interpreted "alleged offender" in Section 1596 to refer to the "perpetrator" in Section 1595, "*i.e.*, the one who commits the predicate TVPRA violation that gives rise to a civil action." Order at 38. The Court dismissed claims against Memac, which is "plainly" not a national of the United States or otherwise present in the United States. *Id.* at 39. But because Defendants Portland, OPRW, and Ogilvy are incorporated in the United States, the Court concluded they were "nationals." *Id.* at 40. And because those Defendants "could be considered to have committed direct violations of section[] 1589"—which punishes anyone who "knowingly benefits . . . from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in [Section 1589] (a), knowing or in reckless disregard of the fact that the venture has engaged" in such activities—the Court concluded that Plaintiffs' claims predicated on § 1589 applied extraterritorially with respect to Portland, OPRW, and Ogilvy. Order at 40 (citation modified). With respect to § 1590, however, the Court explained the provision "lacks language criminalizing participation in a venture that engages in human trafficking," and Plaintiffs did not argue any United States-based Defendants engaged in trafficking directly. As a result, Plaintiffs' claims predicated on § 1590 did not rebut the presumption against extraterritoriality.[1]

---

[1] For Plaintiffs' claims that did not apply extraterritorially (claims against Memac and claims predicated on Section 1590), the Court proceeded to "step two" of *RJR Nabisco*: whether the case "involves a domestic application of the statute." Order at 41 (citation omitted). Because the "focus" of the statute is "wrongdoing committed in Qatar" and the "alleged criminal trafficking and forced labor . . .occurred entirely in Qatar," the Court determined the case did not involve a domestic application of the TVPRA and dismissed claims against Memac and claims predicated on Section 1590. *Id.* at 41-42.

6

In light of the Court's ruling, only Plaintiffs' TVPRA claims against Portland, OPRW, and Ogilvy predicated upon § 1589 are proceeding. Based on the substance of those claims and the parties' initial discussions, anticipated discovery will include: document discovery across continents; depositions of well over 100 Plaintiffs; depositions of multiple defendants (Plaintiffs anticipate seeking between 20-30 depositions); third party discovery; potential coordination of discovery in an active war zone; potential disputes over the location of Plaintiffs' depositions; potential disputes over the timing and number of medical examinations of Plaintiffs; and potential disputes over the availability of each Plaintiff for live testimony at trial. ECF No. 86 at 3-4.

## ARGUMENT

Under 28 U.S.C. § 1292(b), parties may seek interlocutory appeal for "an order not otherwise appealable." Although interlocutory appeals are not to be used to "open the floodgates" for piecemeal litigation in ordinary cases, it is appropriate "where an intermediate appeal may avoid protracted and expensive litigation," especially "when the issues raised are novel and complex and where the practical effect of the order may be dispositive." *In re Currency Conversion Fee Antitrust Litig.*, 2005 WL 1871012, at *3 (S.D.N.Y. Aug. 9, 2005). In determining whether to certify an order for interlocutory appeal, district courts consider whether the order (1) "involves a controlling question of law"; (2) "'there is substantial ground for difference of opinion'"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *Id.* at *2 (quoting 28 U.S.C. § 1292(b)). The third factor is the "most important." *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 2012 WL 2952929, at *8 (S.D.N.Y. July 18, 2012); *see New York v. Arm or Ally, LLC*, 2024 WL 2270351, at *2 (S.D.N.Y. May 20,

---

The Court separately dismissed all claims against Omnicom because Plaintiffs failed to allege Omnicom participated in the Venture. *Id.* at 25. And it dismissed Plaintiffs' claim under New York state law because the state statute does not apply extraterritorially. *Id.* at 47.

2024) (Furman, J.) ("[C]ourts 'place particular weight' on the third prong of the test.").

The Court "must weigh each of those factors and determine whether, taken together, certification of interlocutory appeal is appropriate." *In re Gen. Motors LLC Ignition Switch Litig.*, 427 F. Supp. 3d 374, 391 (S.D.N.Y. 2019) (Furman, J.). The Court need not find all three factors satisfied to certify an appeal under § 1292(b). *Id.*; *see also Figueiredo Ferraz Consultoria E Engenharia De Projeto Ltda. v. Republic of Peru*, 2009 WL 5177977, at \*2 (S.D.N.Y. Dec. 15, 2009) (concluding that failure to establish the second factor "is not fatal to certification, particularly when other factors strongly counsel in favor of a consolidated appeal"); *Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 2014 WL 1881075, at \*2 (S.D.N.Y. May 9, 2014) (Furman, J.) (citing *Peru*, 2009 WL 5177977, at \*2). But it "should not hesitate to certify an interlocutory appeal" where the order to be appealed "satisfies the[] [above] criteria and 'involves a new legal question or is of special consequence.'" *Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013) (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009)). That is the case here.

## I. Whether 18 U.S.C. § 1595 applies extraterritorially is a controlling question of law.

To satisfy the first factor, the issue for appeal must be (1) "a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record" and (2) be "controlling." *Ally*, 2024 WL 2270351, at \*2. A question is "controlling" if "reversal of the district court's opinion could result in dismissal of the action;" reversal "could significantly affect the conduct of the action," even though not resulting in dismissal; or "the certified issue has precedential value for a large number of cases." *Id.* There can be no real dispute that the Order meets the first factor. *F.C. v. Jacobs Sols. Inc.*, 23-cv-02660, ECF No. 80, at 3 n.1 (D. Colo.)

(noting in parallel action that plaintiffs "do not dispute" that whether § 1595 applies extraterritorially is a controlling question of law).

*First*, whether the § 1595 applies extraterritorially is a pure question of law.[2] To answer that question, courts must determine "whether the statute gives a clear, affirmative indication that rebuts the presumption" that federal laws do not apply extraterritoriality. *Nestlé*, 593 U.S. at 632 (citation omitted). That is a question of statutory interpretation. *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 115 (2013) (describing the presumption against extraterritoriality as a "canon of statutory interpretation"). And it is well established that questions of statutory interpretation are quintessential questions of law that the appellate court can decide "quickly and cleanly" without looking beyond the complaint. *See SEC v. Coinbase, Inc.*, 761 F. Supp. 3d 702, 714 (S.D.N.Y. 2025) ("[M]atters of statutory interpretation . . . are typically considered appropriate for certification"); *Ally*, 2024 WL 2270351, at \*1 (concluding that an interpretation of a federal statute, even if "intertwined" with review of plaintiff's complaint, was a question of law). This is also proceeding upon a motion to dismiss, so there is no record to review; and the reviewing court must assume the allegations pleaded in the complaint are true.

*Second*, whether § 1595 applies extraterritorially is a controlling question both because it could result in dismissal of this action and because appellate guidance will provide precedential value. If the Second Circuit determines § 1595 does not apply extraterritorially, that ends Plaintiffs' case. *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990) ("[I]t is clear that a question of law is controlling if reversal of the district court's order would terminate the action."). The Court

---

[2] Although Defendants seek certification based upon the extraterritoriality question, any certification applies to the Court's entire Order. *See City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 391-92 (2d Cir. 2008).

already dismissed Plaintiffs' state law claims, meaning all of Plaintiffs' remaining claims against the Defendants rest upon § 1595's civil cause of action. Order at 47. If that provision does not apply extraterritorially, then Plaintiffs' case cannot proceed.[3]

The Second Circuit's guidance will also have precedential value. *Islam v. Lyft, Inc.*, 2021 WL 2651653, at *4 (S.D.N.Y. June 28, 2021) ("[I]f the Circuit decides to hear the appeal, it would provide valuable guidance to a great number of litigants and lower court judges."). The Second Circuit has not yet passed upon the question, and the number of cases asserting civil liability under the TVPRA for purported conduct abroad are growing. *See F.C. v. Jacobs Sols. Inc.*, 23-cv-02660 (D. Colo. October 12, 2023) (seeking to hold construction management contractors liable for alleged forced labor in Qatar); *C. v. Jacobs Sols. Inc.*, 25-cv-00274 (D. Colo. Jan. 27, 2025) (same); *B. v. Jacobs Sols. Inc.*, 25-cv-03067 (D. Colo. Sept. 30, 2025) (same); *Lun v. Milwaukee Elec. Tool Corp.*, 2025 WL 3443536 (E.D. Wis. Dec. 1, 2025) (seeking to hold Wisconsin corporation liable under the TVPRA for purchasing exported gloves allegedly made with forced labor in China); *Mueller v. Deutsche Bank Aktiengesellschaft*, 24-cv-6225, ECF No. 1 (S.D.N.Y. Aug. 16, 2024) (seeking to hold banks liable under the TVPRA for providing financial services to customers affiliated with ISIS). That "flurry of litigation" demonstrates the need for guidance from the Second Circuit. *Ally*, 2024 WL 2270351, at *3. That is particularly so here, given the expansive

---

[3] Plaintiffs may argue that even if § 1595 does not apply extraterritorially, their claims survive because their case involves a domestic application of the TVPRA. But this Court already rejected that argument with respect to their claims against Memac and their claims based on Section 1590 (trafficking). It concluded that the "focus" of Plaintiffs' case (and therefore the statute) is "wrongdoing committed in Qatar" and the "alleged criminal trafficking and forced labor" that allegedly "occurred entirely in Qatar." Order at 41-42. That reasoning (which dismissed claims based on the trafficking predicate) applies with full force to Plaintiffs' remaining TVPRA claims based on Section 1589 (forced labor predicate). Even if the Second Circuit remanded for this Court's application of *RJR Nabisco* "step two" to Plaintiffs' remaining claims, those claims would be dismissed. And in any event, termination of the action is not required for a question to be "controlling." *Ally*, 2024 WL 2270351, at *3.

and novel theory being advanced by plaintiffs in these types of cases. Absent further guidance, a host of businesses may be exposed to "claims grounded on [their] extraterritorial activities anywhere in the world," causing "a significant and long-term adverse impact on activities abroad." *Eur. Cmty. v. RJR Nabisco, Inc.*, 783 F.3d 123, 128, 130 (2d Cir. 2015) (Cabranes, J., and Jacobs, J., dissenting from denial of rehearing *en banc*).[4]

And courts have expressly and consistently acknowledged the uncertainty and the need for guidance on this question. *See, e.g.*, *Doe I v. Apple Inc.*, 2021 WL 5774224, at *16 (D.D.C. Nov. 2, 2021), *aff'd sub nom. Doe 1 v. Apple Inc.*, 96 F.4th 403 (D.C. Cir. 2024) ("This question of extraterritoriality is a close call."); *Pavlovich v. Palmer*, 2026 WL 353496, at *4 (D. Mass. Feb. 6, 2026) (observing the "uncertainty" as to "whether the civil remedy provision applies extra-territorially"); *Pavlovich v. Gaiman*, 2025 WL 2819372, at *7 (W.D. Wis. Oct. 3, 2025) ("[T]he law is unsettled whether the civil remedies provision in the [TVPRA] applies outside the United States."); *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1168 (9th Cir. 2022) ("These are perplexing questions.").[5]

---

[4] Prior litigation in this Circuit over whether RICO's civil cause of action reached foreign conduct presented similar circumstances and supports certification. There, the district court dismissed the plaintiffs' complaint, holding that the civil cause of action did not apply extraterritorially. *Eur. Cmty. v. RJR Nabisco, Inc.*, 2011 WL 843957, at *7 (E.D.N.Y. March 8, 2011). The Second Circuit reversed, 764 F.3d 129, 133 (2d Cir. 2014), and over multiple dissents, the full court declined to rehear the issue *en banc*, 783 F.3d 123 (2d Cir. 2015). One dissent noted that given the frequency of RICO litigation and the "vexing questions" lower courts would inevitably face, "district courts should not hesitate to certify an interlocutory appeal." 783 F.3d at 128 (Jacobs, J., dissenting from denial of rehearing *en banc*). As discussed *infra*, the Supreme Court ultimately reversed the Second Circuit, concluding the civil cause of action did not reach conduct abroad. *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 335-37 (2016).

[5] Other reasoned courts of appeals' decisions would decrease the uncertainty on this question. Other than the Fourth Circuit, the courts of appeals have not directly addressed it. *See Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 200 (5th Cir. 2017) (addressing whether the TVPRA amendments apply retroactively and accepting the parties' agreement that Section 1595 applies extraterritorially); *Ratha*, 35 F.4th at 1168 (assuming "that § 1595 applies extraterritorially and leav[ing] for another day the question of whether that assumption is correct").

11

## II.   There is substantial ground for difference of opinion.

A substantial ground for difference of opinion under Section 1292(b) exists if "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *Capitol Recs., LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013). The second factor weighs in favor of certification for multiple reasons.

To start, there is conflicting authority as to whether § 1595 applies extraterritorially. Although courts generally agree that "Section 1595 does not contain any express language delineating its geographical scope," Order at 34, they otherwise diverge on how to interpret the statute's text and applicable Supreme Court precedent.

***Effect of § 1596(a).*** Courts across the country disagree as to the import of § 1596(a), which provides that, in certain circumstances, "the courts of the United States have extra-territorial jurisdiction over any offense . . . under section 1581, 1583, 1584, 1589, 1590, or 1591" of the TVPRA. Several courts conclude that § 1596's failure to include § 1595's civil remedy, despite "explicitly grant[ing] extraterritorial application to many criminal statutes," makes clear that § 1595 does not apply extraterritorially. *Apple Inc.*, 2021 WL 5774224, at *15 ("[W]hen a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms."); *see also Lun*, 2025 WL 3443536, at *14 (reasoning that omission of § 1595 in § 1596 shows Congress's intent "not to extend extraterritorially the reach of the statute's civil component"); *Gaiman*, 2025 WL 2819372, at *8 (same); *Mia v. Kimberly-Clark Corp.*, 2025 WL 752564, at *6 (D.D.C. March 10, 2025) (same). In addition, courts look to the text and structure of Section 1596 and conclude it is limited to criminal applications of the TVPRA—rather than expanding the extraterritorial reach of the civil remedy. *E.g.*, *Apple Inc.*, 2021 WL 5774224, at *15; *Mia*, 2025 WL 752564, at *6.

12

Other courts, including this one and the Fourth Circuit, reason as follows: § 1596 grants extraterritorial effect to various predicate offenses proscribed by the TVPRA, while other sections of the Act expressly provide predicate offenses apply extraterritorially (*e.g.*, § 1585 criminalizes the seizure of persons "on any foreign shore"). Section 1595 provides a civil remedy for "[a]n individual who is a victim of *a violation of this chapter*," meaning it "incorporates" the extraterritorial predicates. By that "incorporation," § 1595 itself applies extraterritorially, "at least to the extent that the particular predicate offense supporting a specific claim applies extraterritorially." Order at 35; *Howard*, 917 F.3d at 242; *see also Adhikari*, 845 F.3d at 204 ("[B]y conferring 'extra-territorial jurisdiction over any offense . . . under' the TVPRA, § 1596 permits private parties to pursue a civil remedy under the TVPRA for extraterritorial violations."); *Abafita v. Aldukhan*, 2019 WL 6735148, at *5 (S.D.N.Y. Apr. 4, 2019) (same), *report and recommendation adopted*, 2019 WL 4409472 (S.D.N.Y. Sept. 16, 2019).

**Effect of *RJR Nabisco*.** Courts also disagree as to how the Supreme Court's decision in *RJR Nabisco* applies in this context. In *RJR Nabisco*, the Supreme Court held that § 1962 of RICO, which criminalizes conduct involving a "pattern of racketeering" based upon various predicate offenses, applied extraterritorially, to the extent that the alleged predicate offenses apply extraterritorially. 579 U.S. at 330, 339-40. The Court also held that RICO's civil remedy provision—which provides a private right of action to "[a]ny person injured in his business or property by reason of a violation of [Section] 1962"—did not apply extraterritorially. *Id.* at 346, 349-50. Again, courts reach divergent interpretations of § 1595 based upon those holdings. The Fourth Circuit, this Court, and others conclude that *RJR Nabisco* "compels the extraterritorial application of § 1595 with respect to its extraterritorial predicates." *Howard*, 917 F.3d at 243; *see also* Order at 37 (describing the "key teaching" of *RJR Nabisco* as "a statute may apply to foreign

13

conduct insofar as it clearly and directly incorporates a predicate statutory provision that applies extraterritoriality"); *F.C. v. Jacobs Sols. Inc.*, 790 F. Supp. 3d 1158, 1181-82 (D. Colo. 2025) (similar).

Other courts reach the opposite conclusion, noting that *RJR Nabisco* specifically rejects "that a private right of action must reach abroad because the underlying law governs conduct in foreign countries." *Mia*, 2025 WL 752564, at *7 (quoting *RJR Nabisco*, 579 U.S. at 349-50); *see also Palmer*, 2026 WL 353496, at *4; *Gaiman*, 2025 WL 2819372, at *8; *Lun*, 2025 WL 3443536, at *13. That is because such reasoning "fail[s] to appreciate that the presumption against extraterritoriality must be applied separately to both [a criminal statute's] substantive prohibitions and its private right of action." *Mia*, 2025 WL 752564, at *7 (quoting *RJR Nabisco*, 579 U.S. at 350). And, moreover, the need to enforce the presumption against extraterritoriality is at "its apex" when interpreting a civil remedy's application to foreign conduct, in part because the "'check imposed by prosecutorial discretion' is absent." *Mia*, 2025 WL 752564, at *7 (quoting *RJR Nabisco*, 579 U.S. at 346, 348). In other words, "the fact that the government can prosecute a *criminal violation* of the statute that takes place outside the country does not necessarily mean that a plaintiff can maintain a *civil claim* based on the same conduct." *Lun*, 2025 WL 3443536, at *10. These courts see no daylight between § 1595 (which "incorporates" criminal predicates with extraterritorial reach) and RICO's non-extraterritorial civil remedy (which likewise references a criminal predicate with extraterritorial reach). *Mia*, 2025 WL 752564, at *7; *see also Lun*, 2025 WL 3443536, at *10; *Gaiman*, 2025 WL 2819372, at *7.

Although this Court has recognized that "disagreement among courts outside the circuit does not *alone* support the certification of an interlocutory appeal," *Ally*, 2024 WL 2270351, at *4 (citation modified), that disagreement is not the only basis for certification; the other § 1292(b)

14

factors weigh heavily in favor of certification. *See supra* at 8-11 (first factor) and *infra* at 17-20 (third factor). Nor is the out-of-circuit disagreement the only basis for concluding there is substantial ground for disagreement: The issue is of first impression for the Second Circuit, particularly difficult, and unsettled. *Capitol Recs., LLC*, 972 F. Supp. 2d at 552 (concluding issue presented substantial ground for difference of opinion based on issue of first impression, "conflicting conclusions" by other courts, and "paucity of case law"); *see also Consub Delaware LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 309 (S.D.N.Y. 2007)*, aff'd,* 543 F.3d 104 (2d Cir. 2008) (stating a substantial ground for a difference of opinion may be established by "a genuine doubt as to whether the district court applied the correct legal standard in its order"); *Coinbase, Inc.*, 761 F. Supp. 3d at 717 (concluding that even if the relevant cases "were not considered conflicting authority, there is a second substantial ground for difference of opinion" based on the "difficult issue of first impression for the Second Circuit."); *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) ("[U]ncertainty provides a credible basis for a difference of opinion").

In assessing disputed issues that are questions of first impression, courts "analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a *substantial* ground for dispute." *In re Flor,* 79 F.3d 281, 284 (2d Cir. 1996); *see also Pen Am. Ctr., Inc. v. Trump*, 2020 WL 5836419, at *3 (S.D.N.Y. Oct. 1, 2020) ("[T]he proper inquiry is an evaluation of the strength of the arguments in opposition to the challenged ruling."). As this Court has already recognized, Defendants' arguments on the extraterritoriality question have "some force." Order at 34. That observation is not surprising: Several district courts have issued reasoned decisions holding that § 1595 does not apply extraterritorially. *E.g.*, *Mia*, 2025 WL 752564; *Lun*, 2025 WL 3443536, at *10. That is sufficient

15

to satisfy the second factor. *See also In re Gen. Motors LLC Ignition Switch Litig.*, 427 F. Supp. 3d at 393 (finding arguments "sufficiently forceful" to satisfy second factor, while recognizing out-of-circuit disagreement alone not sufficient).

Courts have also recognized that whether the TVPRA's civil remedy has extraterritorial effect is a difficult and unsettled question. *Ratha*, 35 F.4th at 1168 ("These are perplexing questions."); *Apple*, 2021 WL 5774224, at *16 ("[The] question of extraterritoriality is a close call."); *Palmer*, 2026 WL 353496, at *4 (observing the "uncertainty"); *Gaiman*, 2025 WL 2819372, at *7 (noting the law is "unsettled"). Appeals are pending in three other circuits. *Lun v. Milwaukee Elec. Tool. Corp.*, No. 25-3347 (7th Cir. appeal docketed Dec. 31, 2025); *Mia v. Kimberly Clark Corp.*, No. 25-7046 (D.C. Cir. appeal docketed Apr. 8, 2025); *Pavlovich v. Palmer*, No. 26-1151 (1st Cir. appeal docketed Feb. 13, 2026).[6] The Second Circuit should have the opportunity to decide whether to weigh in on this novel and difficult question.

Regardless, the "level of uncertainty required to find a substantial ground for difference of opinion" is minimal here, given the importance of the question. Wright & Miller, Criteria for Permissive Appeal, 16 Fed. Prac. & Proc. § 3930 (3d ed.) ("The level of uncertainty required to find a substantial ground for difference of opinion should be adjusted to meet the importance of the question in the context of the specific case."); *Atl. City Elec. Co. v. Gen. Elec. Co.*, 207 F. Supp. 613, 620 (S.D.N.Y. 1962) (reasoning that because there "are strong reasons for having" a

---

[6] Oral argument was held on January 20, 2026, in the D.C. Circuit, during which one panel member asked appellants' counsel to "assume for a minute that [she] d[id not] think the statute applies extraterritorially." *See Mia v. Kimberly Clark Corp.*, No. 25-7046, Oral Argument at 3:20-3:25 (D.C. Cir. Jan. 20, 2026) (Millett, Katsas, Rao, JJ.), available at https://perma.cc/RL2H-K5ZS. Amici participation split on the extraterritoriality question. The Chamber of Commerce of the United States submitted an amicus brief in support of defendants-appellees, *see* U.S. Chamber of Com. Amicus Br., *Mia v. Kimberly Clark Corp.*, No. 25-7046 (D.C. Cir. Oct. 27, 2025), and a group of legal scholars submitted an amicus brief in support of neither party, but arguing the district court erred in holding the TVPRA's civil remedy does not apply extraterritorially, *see* Legal Scholars Amicus Br., *Mia v. Kimberly Clark Corp.*, No. 25-7046 (D.C. Cir. Aug. 27, 2025).

question of statutory interpretation "conclusively determined and determined expeditiously," "a narrow approach is not justified" in determining the second factor). Although whether § 1595 applies extraterritorially is not jurisdictional, it is a threshold question that is central to the disposition of this case. Wright & Miller, § 3930 ("If proceedings that threaten to endure for several years depend on an initial question of jurisdiction, limitations, or the like, certification may be justified at a relatively low threshold of doubt.").

The question whether § 1595 applies extraterritorially satisfies the second factor. The *Jacobs* court's conclusion otherwise is wrong and rests on the improper assumption that defendants must show a circuit split. *F.C. v. Jacobs Sols. Inc.*, 23-cv-02660, ECF No. 131 at 6-7 (finding no substantial ground for disagreement because there was "hardly a circuit split"). That is inconsistent not only with the law in this district, *see supra* at 12, 14-17, but the prevailing approach across circuits, *see Reese*, 643 F.3d at 688 & n.5 (rejecting "formalistic" approach and concluding that "[a] substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed."); *In re Trump*, 874 F.3d 948, 952 (6th Cir. 2017) (substantial ground for disagreement where "fair-minded jurists might reach contradictory conclusions"); *see also APCC Servs., Inc. v. AT & T Corp.*, 297 F. Supp. 2d 101, 108 (D.D.C. 2003) (substantial ground for disagreement based on "the absence of any authority in this jurisdiction regarding th[e] issue, and an unanimous decision from an appellate court in another circuit on the same issue").

## III.    Interlocutory appeal may materially advance the termination of this litigation

The final factor, which courts recognize as "most important," *Ally*, 2024 WL 2270351, at *2, strongly favors certification. It is "closely connected to the first prong in practice" and "is met when an intermediate appeal promises to advance the time for trial or to shorten the time required for trial." *Id.* (citation omitted). That is certainly the case here, where reversal of the Court's order

17

could result in complete dismissal, "resolving an important" and "dispositive" issue. *Id.* at \*4; *see also Coinbase, Inc.*, 761 F. Supp. 3d at 721 ("[I]t is the *possibility* of reversal, not the certainty of it, that weighs in favor of certifying the Order for interlocutory appeal.").[7]

Certification is also appropriate to avoid the "prolonged pretrial and protracted trial efforts" that are inevitable in this case. Wright & Miller, Permissive Interlocutory Appeals—Section 1292(b), 16 Fed. Prac. & Proc. Juris. § 3929 (3d ed.); *Capitol Recs., LLC*, 972 F. Supp. 2d at 554 ("Certification of the above question is appropriate because a definitive answer may save the Court and parties vast amounts of expense and time." (citation omitted)); *Texaco Inc.*, 802 F. Supp. at 29 (certifying question because otherwise, "[d]iscovery and trial of these issues would consume vast amounts of expense and time for the parties" and "[t]rial could occupy the court for many months"); *In re Gen. Motors LLC Ignition Switch Litig.*, 427 F. Supp. 3d at 393 (certifying appeal for judicial economy). This is a complex case. It involves 106 plaintiffs, each residing abroad and asserting individualized allegations with respect to liability and damages. Compl. ¶¶ 188-294. Discovery will occur across continents. ECF No. 86 at 2. Depositions will require translators. *Id.* Defendants are likely to request that the Court order medical examinations of Plaintiffs. Fed. R. Civ. P. 35(a). And the parties dispute how, where, and when depositions and trial testimony of Plaintiffs will occur. ECF No. 86 at 3-4.

The complexity of discovery is not speculative; it is already playing out in Plaintiffs' parallel cases in Colorado. As Plaintiffs acknowledged in one of those cases (which involves less than half the number of Plaintiffs as this case), "the geographic scope" of the litigation "is exceptionally broad." *Jacobs*, 23-cv-02660, ECF No. 135 ¶ 8 (Joint Motion to Amend Scheduling

---

[7] Plaintiffs likewise "do not dispute" that an appeal, if successful, "materially advance[s] the ultimate termination of the litigation." *F.C. v. Jacobs Sols. Inc.*, 23-cv-02660, ECF No. 80, at 3 n.1 (D. Colo.).

Order). Defendants are conducting depositions of each Plaintiff in Manila. *Jacobs*, 23-cv-02660, ECF No. 75 at 8; *id.*, ECF No. 113 at 1 n.1 (describing "deposition program in Manila"). As of February, depositions had been planned in five countries and three U.S. states, across six different time zones. *Id.*, ECF No. 126 at 9. The parties are facing significant discovery challenges and disputes. For example, the ongoing conflict in the Middle East has "materially impaired" discovery and "created significant logistical hurdles, safety concerns, and complicated international travel and communications with a Plaintiff and other witnesses located in impacted countries." *Id.*, ECF No. 135 at 2-3. Because none of the plaintiffs were able to secure visas to the United States for necessary medical examinations, Defendants had to secure "qualified Philippines-based physicians to conduct [the exams]" in remote regions and "in coordination with U.S-based physicians participating remotely." *Id.*, ECF No. 132 at 2. Safely and effectively coordinating discovery will present similar difficulties in this case. And that all precedes trial, which Defendants expect to take at least three or four months. ECF No. 86 at 4.

Defendants acknowledge that the *Jacobs* court denied certification on the same question. *Jacobs*, 23-cv-02660, ECF No. 131. But that decision is not binding on this Court, and in any event, it is wrong. As an initial matter, the district court in *Jacobs* denied certification in part because the case had been pending for two-and-a-half years, *id.* at 7. And the *Jacobs* defendants did not seek a stay pending certification and interlocutory review, *id.*, ECF No. 79, meaning discovery had proceeded for at least eight months. This case was filed one year ago today, and discovery is only about to begin. *Cf. United States v. Wells Fargo Bank, N.A.*, 2015 WL 14072740, at *1 (S.D.N.Y. Nov. 2, 2015) (Furman, J.) (denying certification where the case had been filed over three years before and "contentious and protracted" discovery was due to close 18 days later). As explained above, this Court's Order satisfies the § 1292(b) factors. And despite the *Jacobs*

19

plaintiffs' (represented by the same counsel here) concession that the first and third factors were satisfied, the *Jacobs* court wrongly concluded that the defendants in that case had not shown "substantial ground for difference of opinion" as to the extraterritoriality question. *Id.* at 3, 4. That analysis gives exceedingly short shrift to the reasoned district court opinions interpreting Supreme Court precedent and concluding that the civil remedy provision of the TVPRA does not apply extraterritorially. *Id.* at 4-5. Indeed, the court did not even acknowledge the pending appeal in the D.C. Circuit. *Id.* at 6 (instead noting that the D.C. Circuit declined to take up the issue in an earlier case). The *Jacobs* court emphasizes the lack of a circuit split—which is not the relevant standard. *See supra* at 12, 14-17. And it incorrectly concludes that appeals courts are in widespread agreement on the extraterritoriality question based upon (1) a Ninth Circuit case that "assum[ed] without deciding" § 1595 applies extraterritorially and (2) a Fifth Circuit case addressing a different question (whether the TVPRA amendments applied retroactively), where parties did not dispute that § 1595 applies extraterritorially. *Id.* at 6; *see also supra* at 11 n.5.

\* \* \*

The question of whether the TVPRA's civil remedy provision applies to conduct abroad is outcome determinative in this case. The Second Circuit's guidance will provide necessary clarity, not only for the parties to this suit but for litigants in cases across this District and others. Interlocutory appeal is particularly appropriate here, where the parties are bound to be embroiled in cross-continent discovery disputes and challenges that will impose on the time and resources of the Court and non-parties. Before complex, cross-continent discovery occurs, the Second Circuit should consider whether to hear this important question.

## CONCLUSION

The Court should certify its Order (ECF No. 72) for interlocutory appeal.

20

Dated: New York, New York,
April 24, 2026

**DAVIS+GILBERT LLP**

By: */s/ James R. Levine*             By: */s/ Steven P. Lehotsky*

James R. Levine                         Steven P. Lehotsky\*
Gregg A. Gilman                        Mary Elizabeth Miller\*
William S. Kukin                       Robert B. Dunteman\*
Dana Z. Horowitz                     Lehotsky Keller Cohn LLP
1675 Broadway                       200 Massachusetts Ave., NW
New York, New York 10019            Washington, D.C. 20001
(212) 468-4800                         steve@lkcfirm.com
jlevine@dglaw.com                   mary@lkcfirm.com
ggilman@dglaw.com                 bobby@lkcfirm.com
wkukin@dglaw.com
dhorowitz@dglaw.com               Mark M. Rothrock\*
                                   Lehotsky Keller Cohn LLP
*Attorneys for Defendant Portland PR*   8513 Caldbeck Drive
*Inc.*                              Raleigh, NC 27615
                                   mark@lkcfirm.com

                                 \* Admitted *Pro hac vice*

                                 *Attorneys for Defendants Ogilvy Group, LLC, and Ogilvy Public Relations Worldwide LLC*

21

**<u>CERTIFICATION OF WORD COUNT</u>**

I, Steven P. Lehotsky, an attorney duly admitted to practice law in this Court, hereby certify that this Memorandum of Law complies with the word count limit because it contains 6,824 words, excluding the parts exempted by Section 4(C) of the Court's Individual Rules and Practices in Civil Cases and Local Civil Rule 7.1(c). In preparing this certification, I have relied on the word count of the word-processing system used to prepare this Memorandum.

Dated: New York, New York,
April 24, 2026

By: */s/ Steven P. Lehotsky*
    Steven P. Lehotsky*
    Mary Elizabeth Miller*
    Robert B. Dunteman*
    Lehotsky Keller Cohn LLP
    200 Massachusetts Ave., NW
    Washington, D.C. 20001
    steve@lkcfirm.com
    mary@lkcfirm.com
    bobby@lkcfirm.com

    Mark M. Rothrock*
    Lehotsky Keller Cohn LLP
    8513 Caldbeck Drive
    Raleigh, NC 27615
    mark@lkcfirm.com

    * Admitted *Pro hac vice*