UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| A.A. et al., Plaintiffs, -v- OMNICOM GROUP, INC. et al., Defendants. | 25-CV-3389 (JMF) MEMORANDUM OPINION AND ORDER |

JESSE M. FURMAN, United States District Judge:

This case was brought by 106 Filipino nationals who were among thousands of foreign construction workers sent to Qatar to work on infrastructure for the 2022 World Cup. Claiming that they were trafficked to Qatar and forced to work there under nightmarish conditions, they filed suit against public relations and lobbying firms ("Defendants") under the Trafficking Victims Protection Reauthorization Act (the "TVPRA") and analogous provisions of New York law. They alleged that Defendants' work on behalf of the Qatari government and related entities played an integral role in enabling their abuse by covering up, minimizing, and otherwise "sportswashing" their terrible working conditions. *See generally* ECF No. 1 ("Compl."). Defendants moved to dismiss the Complaint, arguing that Plaintiffs lacked standing to bring their claims; that the Court lacked personal jurisdiction over one Defendant; and that Plaintiffs failed to state any valid claims because, among other things, the relevant provisions of the statutes at issue do not apply extraterritorially. *See* ECF No. 54; *see also* ECF No. 55.

In a February 24, 2026 Opinion and Order, familiarity with which is presumed, the Court granted in part and denied in part Defendants' motion to dismiss. *See A.A. v. Omnicom Grp.*, No. 25-CV-3389 (JMF), 2026 WL 504904, at *1 (S.D.N.Y. Feb. 24, 2026) (ECF No. 72). Most

relevant for present purposes, the Court applied the two-step framework for determining whether a statute applies extraterritoriality established in *RJR Nabisco v. European Community*, 579 U.S. 325 (2016), and concluded, at the first step, that the TVPRA's private right of action — Section 1595 — applied extraterritorially, "at least to the extent that the particular predicate offense supporting a specific claim applies extraterritorially." *Id.* at *17 (cleaned up). Further, the Court found that the predicate offenses alleged in this case applied extraterritorially if, among other requirements, Defendants were "nationals of the United States or otherwise present in the United States." *Id.* at *18 (cleaned up). Accordingly, it held that Plaintiffs could maintain claims under Section 1595 against three Defendants based in the United States — Portland PR, Inc., Ogilvy Public Relations Worldwide LLC, and Ogilvy Group, LLC — to the extent they were premised on extraterritorial violations of Section 1589 of the TVPRA. *See id.* at *17-19. By contrast, the Court held that Plaintiffs could *not* sustain any claims against the sole foreign defendant — Memac Ogilvy & Mather LLC — or against any of the Defendants to the extent they were premised on violations of Section 1590 of the TVPRA because doing so would "involve impermissible extraterritorial applications of the [statute]." *Id.* at *20.

Moving on to the second step of *RJR Nabisco*, the Court held that Plaintiffs could not save their extraterritorial TVPRA claims by characterizing them as "domestic application[s] of the statute," because "the alleged criminal trafficking and forced labor alleged here occurred entirely in Qatar." *Id.* at *19. The Court likewise dismissed Plaintiffs' state-law claims, finding that the relevant New York statutes do not apply extraterritorially and that Plaintiffs' claims under those statutes likewise could not be characterized as involving domestic applications for the same reasons as their TVPRA claims. *See id.* at *22.

Now pending are two motions filed by Defendants: (1) a motion to certify the Court's February 24, 2026 Opinion and Order ("Order") for interlocutory appeal pursuant to 28 U.S.C. § 1292(b); and (2) a motion to stay proceedings pending resolution of any interlocutory appeal. *See* ECF Nos. 93, 95. For the reasons that follow, Defendants' motion to certify is GRANTED and the motion to stay is GRANTED in part and DENIED in part.

The Court will briefly address each motion in turn.

**MOTION FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL**

Defendants argue that the Order should be certified for interlocutory appeal under Section 1292(b) because it held that Section 1595 of the TVPRA applies extraterritorially. *See* ECF No. 94 ("Defs.' 1292(b) Mem."), at 1-3. Section 1292(b) represents a "rare exception" to the "basic tenet of federal law" that appellate review should be delayed "until a final judgment has been entered." *Koehler v. Bank of Bermuda, Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996). A district court has discretion to certify an order for interlocutory appeal if the moving party shows that the order "(1) involves a controlling question of law"; (2) "there is substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, No. 12-CV-8852 (JMF), 2014 WL 1881075, at *1 (S.D.N.Y. May 9, 2014). "District courts must weigh each of those factors and determine whether, taken together, certification of interlocutory appeal is appropriate." *In re General Motors LLC Ignition Switch Litig.*, 427 F. Supp. 3d 374, 391 (S.D.N.Y. 2019). Significantly, the failure to establish one factor "is not fatal to certification, particularly when other factors strongly counsel in favor of a consolidated appeal." *Figueiredo Ferraz Consultoria e Engenharia de Projeto Ltda. v. Republic of Peru*, No. 08-CV-492 (WHP), 2009 WL 5177977, at *2 (S.D.N.Y. Dec. 15, 2009).

Applying those standards here, the Court concludes that certification of the Order for interlocutory appeal is appropriate. For starters, there is no dispute that the Court's Order satisfies the first and third factors of the test. *See* ECF No. 99 ("Pls.' Opp'n"), at 2 n.1. To satisfy the first factor, the Order must involve "a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Century Pac., Inc. v. Hilton Hotels Corp.*, 574 F. Supp. 2d 369, 371 (S.D.N.Y. 2008) (internal quotation marks omitted). Additionally, the question must be "controlling," meaning that "reversal of the district court's opinion could result in dismissal of the action." *In re A2P SMS Antitrust Litig.*, No. 12-CV-2656 (AJN), 2015 WL 876456, at *3 (S.D.N.Y. Mar. 2, 2015) (Nathan, J.) (cleaned up). As the Court noted in the Order, "[c]onstruing the scope of extraterritoriality . . . is a matter of 'statutory construction,'" *A.A.*, 2026 WL 504904, at *19 n.7 (quoting *RJR Nabisco*, 579 U.S. at 335), which is a quintessential pure question of law, *see SEC v. Coinbase, Inc.*, 761 F. Supp. 3d 702, 714 (S.D.N.Y. 2025) ("[M]atters of statutory interpretation, divorced as they are from the factual record, are typically considered appropriate for certification."). And that question of law is also plainly controlling. As the Court held that Plaintiffs' TVPRA and state-law claims do not involve domestic applications of the relevant statutes, *see A.A.*, 2026 WL 504904, at *19, their claims are now premised solely on the extraterritorial applicability of Section 1595 of the TVPRA. A contrary decision by the Second Circuit on that issue would thus require dismissal of the Complaint in its entirety.

The third factor — "whether immediate appeal will materially advance the ultimate termination of the litigation," *Transp. Workers Union of Am., Loc. 100 v. N.Y.C. Transit Auth.*, 358 F. Supp. 2d 347, 350 (S.D.N.Y. 2005) — is "closely connected" to the first. *New York v. Arm or Ally, LLC*, No. 22-CV-6124 (JMF), 2024 WL 2270351, at *2 (S.D.N.Y. May 20, 2024).

It "is met when an intermediate appeal promises to advance the time for trial or to shorten the time required for trial." *Id.* (internal quotation marks omitted). Courts "place particular weight" on this factor, *Transp. Workers Union*, 358 F. Supp. 2d at 350, and, in evaluating it, "must consider the institutional efficiency of both the district court and the appellate court," *Arm or Ally*, 2024 WL 2270351, at *2; *see also United States v. Wells Fargo Bank, N.A.*, No. 12-CV-7257 (JMF), 2015 WL 14072740, at *1 (S.D.N.Y. Nov. 2, 2015) (describing the third factor as the "most important"). Here, this factor too clearly weighs in favor of certification because, as noted, a contrary decision by the Second Circuit on extraterritoriality would immediately terminate this litigation. By contrast, the path ahead in this Court is long and arduous. As Plaintiffs acknowledge, both "parties . . . face substantial discovery," Pls.' Opp'n 10, including conducting multiple depositions and medical examinations in foreign countries through translators, *see* Defs.' 1292(b) Mem. 18-19. Indeed, the parties anticipate that it will take over a year to complete that discovery with trial estimated to take anywhere from 2.5 to 4 months thereafter. *See* ECF No. 89. Courts have concluded that "[c]ertification . . . is appropriate" in similar circumstances "because a definitive answer may save the Court and parties vast amounts of expense and time." *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 554 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Am. Geophysical Union v. Texaco Inc.*, 802 F. Supp. 1, 29 (S.D.N.Y. 1992) (certifying an order when "[d]iscovery and trial . . . would consume vast amounts of expense and time for the parties."). Given Defendants' representation that they intend to request expedited briefing and argument in the Second Circuit should the case proceed on certified appeal, *see* Defs.' 1292(b) Mem. 3, the same outcome appears warranted here.

The second factor — that "there is substantial ground for difference of opinion" — is the only one that Plaintiffs dispute. 28 U.S.C. § 1292(b). It is typically met where "(1) there is

conflicting authority on the issue, *or* (2) the issue is particularly difficult and of first impression for the Second Circuit." *Arm or Ally, LLC*, 2024 WL 2270351, at *2 (emphasis added) (internal quotation marks omitted). "A mere claim that a district court's decision was incorrect or the mere presence of a disputed issue that is a question of first impression, standing alone is insufficient." *Id.* (cleaned up). Instead, a district court must "analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is *substantial* ground for dispute." *Id.* (emphasis in original).

Even if this factor leaned in Plaintiffs' favor, certification would probably be warranted given the strength of the first and third factors. But in any event, the second factor also weighs in favor of certification — although admittedly not nearly as strongly. As both parties acknowledge, the question of whether Section 1595 of the TVPRA applies extraterritorially is one of first impression in the Second Circuit. *See* ECF No. 100 ("Defs.' Reply"), at 6. And courts across the country have come to opposite conclusions on the issue. *Compare Roe v. Howard*, 917 F.3d 229 (4th Cir. 2019) (holding that Section 1595 applies extraterritorially), *with Mia v. Kimberly-Clark Corp.*, No. 22-CV-2353 (CJN), 2025 WL 752564, at *6-8 (D.D.C. Mar. 10, 2025) (holding that it does not), *and Doe I v. Apple Inc.*, No. 19-CV-3737 (CJN), 2021 WL 5774224, at *15 (D.D.C. Nov. 2, 2021) (same), *aff'd without addressing the issue*, 96 F.4th 403 (D.C. Cir. 2024). Plaintiffs are correct that "[d]isagreement among courts outside the circuit does not *alone* support the certification of an interlocutory appeal." Pls.' Opp'n 7 (quoting *In re Barclays Liquidity Cross & High Frequency Trading Litig.*, 14-MD-2589 (JMF), 2019 WL 3202745, at *2 (S.D.N.Y. July 16, 2019) (emphasis added)). But the disagreement is certainly evidence that the issue is "particularly difficult." *Arm or Ally, LLC*, 2024 WL 2270351, at *2 (internal quotation marks omitted). And indeed, in rejecting the other courts' reasoning, the

Court acknowledged that it had "some force." *A.A.*, 2026 WL 504904, at *16; *see also, e.g.*, *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1168 (9th Cir. 2022) (describing the question of Section 1595's extraterritorial application as "perplexing").

In short, the Court finds that the second factor supports certification and that, when combined with the undisputed strength of the first and third factors, certification of the Order pursuant to Section 1292(b) is warranted.

**MOTION FOR A STAY PENDING INTERLOCUTORY APPEAL**

In light of that conclusion, the Court turns to Defendants' motion to stay the case pending resolution of any interlocutory appeal. *See* ECF No. 95; *see also* ECF No. 96 ("Defs.' Stay Mem."), at 4. Federal law provides that an "application for an appeal [under Section 1292(b)] shall not stay proceedings in the district court unless the district judge . . . shall so order." 28 U.S.C. § 1292(b). Accordingly, "determination [of] whether to enter a stay pending an interlocutory appeal is within the discretion of the district court." *Ferring B.V. v. Allergan, Inc.*, 343 F. Supp. 3d 284, 291 (S.D.N.Y. 2018) (internal citation and quotation marks omitted). When considering whether to grant such a stay, courts consider:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) (cleaned up); *see also Nken v. Holder*, 556 U.S. 418, 434 (2009). The stay factors are a "sliding scale" in which "the necessary level or degree of possibility of success will vary according to the court's assessment of the other stay factors." *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006) (cleaned up). In other words, "more of one [factor] excuses less of the other." *Id.* (cleaned up). "In deciding whether to grant the stay, moreover, the first and second factors are the 'most

critical.'" *Meyer v. Kalanick*, 203 F. Supp. 3d 393, 395 (S.D.N.Y. 2016) (quoting *Nken*, 556 U.S. at 434). In light of the discussion above, the Court concludes that these factors, taken together, weigh in favor of a *partial* stay pending resolution of any interlocutory appeal.

As to the first factor, the Court is not prepared to go so far as to say that Defendants have "made a strong showing that [they are] likely to succeed on the merits." *In re World Trade Ctr.*, 503 F.3d at 170. But in the context of a stay pending an interlocutory appeal, this factor is satisfied "if there are serious questions about the merits of the dispute." *Sanchez v. Clipper Realty, Inc.*, No. 21-CV-8502 (KPF), 2022 WL 17091007, at *1 (S.D.N.Y. Nov. 21, 2022) (cleaned up). "That standard recognizes that courts will rarely find that their own opinion is likely to be overturned." *Id.*; *see also Meyer*, 203 F. Supp. 3d at 395 ("Admittedly, a district court that issued an order that is being challenged on appeal may be predisposed to be unimpressed by the challenges to that ruling."). Here, as discussed above, the arguments supporting Defendants' position that Section 1595 of the TVPRA does not apply extraterritorially are substantial and raise serious questions. Accordingly, the first factor weighs in favor of a stay.

The second and third factors, by contrast, are something of a wash. As to the second, Defendants acknowledge that the only harm they will incur absent a stay is the expense of discovery and further litigation. *See* Defs.' Stay Mem. 5-6. But it is well established that "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of the stay, are not enough to show irreparable harm." *Doe v. King*, No. 20-CV-2331 (PMH), 2022 WL 445660, at *1 (S.D.N.Y. Feb. 14, 2022) (cleaned up). And as to the third element, the only harm Plaintiffs assert from a stay is that they will have to "further delay their day in court." Pls.' Opp'n 10. But given that this case has been pending for little more than a

year and that, absent a stay, discovery would extend well into next year, *see* ECF No. 89, the risk of any substantial injury to Plaintiffs from further delay while the parties await a definitive ruling from the Second Circuit appears to be minimal. That risk is further mitigated if discovery is not stayed altogether, which, as discussed below, is where the Court lands.

Finally, the fourth element — the public interest — weighs strongly in favor of a stay, albeit only a partial one. "Considerations of judicial economy counsel against investing court resources in proceedings that may prove to be unnecessary." *Sanchez*, 2022 WL 17091007, at *2. As the Court has already noted, certain aspects of discovery in this case — most notably, the dozens of depositions in foreign countries that will be required — will be expensive and arduous. A reversal by the Second Circuit would obviate the need to take those depositions and, thus, would "save the Court and parties vast amounts of expense and time." *Capitol Records*, 972 F. Supp. 2d at 554 (internal quotation marks omitted). As Defendants acknowledge, however, "written discovery (including responses and objections)," Defs.' Stay Mem. 10 n.2, are not as likely to present significant logistical difficulties or expense. The same may be true for at least some categories of document discovery, depending on the nature and location of the documents.

On balance, therefore, the Court finds that the first and fourth factors weigh in favor of a partial stay and that the second and third factors do not counsel otherwise. Thus, discovery is stayed, albeit only partially. As to the scope of the stay, the Court is inclined to order that (1) no depositions should occur unless there is good cause to preserve a particular deponent's testimony (e.g., illness); (2) written discovery should proceed; and (3) document discovery should proceed if the nature and location of the documents would not make discovery unduly expensive or complicated. The parties shall meet and confer with respect to these matters, including both the scope and timing of the limited discovery that should be permitted to proceed during the

pendency of any interlocutory appeal. With that caveat, Defendants' motion for a stay pending resolution of their interlocutory appeal is GRANTED in part and DENIED in part.

## CONCLUSION

For the foregoing reasons, Defendants' motion to certify the Order for interlocutory appeal pursuant to Section 1292(b) is GRANTED. The motion for a stay pending resolution of any such interlocutory appeal is GRANTED in part and DENIED in part. The parties are ORDERED to meet and confer with respect to both the scope and timing of what discovery is to proceed pending the resolution of the interlocutory appeal and, **no later than two weeks from the date of this Opinion and Order**, file a joint letter with respect to these issues. Defendants are ORDERED (with their consent, *see* Defs.' 1292(b) Mem. 3) to seek expedited review and briefing before the Second Circuit. Finally, the parties are ORDERED to file a joint letter notifying the Court when the interlocutory appeal is resolved and proposing next steps. The Clerk of Court is directed to terminate ECF Nos. 93 and 95.

SO ORDERED.

Dated: July 13, 2026
New York, New York

JESSE M. FURMAN
United States District Judge