**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

A.A., A.B., A.D., A.G., A.P., A.S., A.V., Al.C., Am.P., An.A., An.D., Ar.A., Ari.R., Arn.R., B.D., B.M., B.T., C.C., C.S., C.V., D.D.R., D.L., E.A., E.C., E.D.C., E.D.L., E.G., E.L., E.M., Ed.T., En.C., Er.T., F.B., F.S., F.T., G.A., G.D.L., G.G., G.O., G.S., G.T., H.V., I.E., J.A., J.B., J.C., J.D.C., J.F., J.J.G., J.L., J.N.B., J.O., J.P., J.S., J.T., Ji.T., Jo.B., L.G., L.L., L.N., L.P., L.V., M.A., M.D.L., M.G., M.R., M.S., N.C., P.C., R.A., R.B., R.B.E., R.C., R.D., R.E., R.F., R.I., R.L., R.N., R.P., R.S., R.T., R.V., Ra.D., Ra.G., Ra.L., Ra.V., Re.C., Re.D., Rh.P., Ri.C., Ri.O., Ro.D., Ro.L., Ro.P., Rod.O., Rog.B., Rol.P., Rom.B., Ron.O., S.N., T.L., V.A., V.B., V.M., and W.B.,

Plaintiffs,

v.

PORTLAND PR INC., OGILVY GROUP, LLC, and OGILVY PUBLIC RELATIONS WORLDWIDE LLC,

Defendants.

Civil Action No. 1:25-cv-03389-JMF

**JOINT STIPULATION AND ~~[PROPOSED]~~ ORDER REGARDING PROTOCOL FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND OTHER MATERIALS**

**WHEREAS**, Rule 26(f) of the Federal Rules of Civil Procedure ("FRCP") states that the parties must develop a proposed discovery plan that states the parties' views and proposals on, among other things, "any issues about disclosure, discovery, or preservation of electronically

stored information, including the form or forms in which it should be produced," Fed. R. Civ. P. 26(f)(3)(C);

**WHEREAS**, the parties (each individually, a "Party" and collectively, the "Parties") in the above-captioned case (the "Action") mutually seek to manage the time, expense, and other burdens of discovery of certain electronically stored information ("ESI"), and to better define the scope of their obligations with respect to preserving and producing such information and materials;

**WHEREAS**, this Order supplements the FRCP, including Rules 26 and 34 concerning the discovery of ESI and the Local Rules for the United States District Court for the Southern District of New York (the "Local Rules"); and

**WHEREAS**, this Order does not displace Rules 26 or 34 or diminish a party's obligations to search for, collect, and produce discoverable information, whether kept in the ordinary course as ESI or as Hard Copy Documents.

**NOW THEREFORE**, it is hereby **ORDERED:**

## I. DEFINITIONS

The following definitions will apply in this Order:

**Bates Number** means a unique consecutive alphanumeric identifier without spaces associated with every physical sheet of paper, electronic file, electronically stored TIFF image, or other tangible thing, consisting of (1) an alphabetic portion identifying the producing Party, the individual Plaintiff to the extent that a document pertains to a single Plaintiff or was in the possession or custody of a single Plaintiff, and/or other characteristics of the production; and (2) a numeric portion incremented according to a scheme defined at the producing Party's discretion to ensure that the alphanumeric identifier for each physical sheet of paper, electronic file,

electronically stored TIFF image, or other tangible thing is unique. The Bates numbers must be in a consistent font type and size. The producing Party must make reasonable efforts to avoid obscuring information originally appearing on the document.

**Document** means anything subject to production or inspection under Federal Rule of Civil Procedure 34(a), including (1) any document or ESI—including writings, drawings, presentations, graphs, charts, photographs, sound recordings, videos, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or (2) any tangible thing.

**ESI** means any electronically stored file or information kept as such in the ordinary course, consistent with Federal Rule of Civil Procedure 34(a)(1)(A).

**Hard Copy Document** means a Document kept in physical form, as opposed to electronic form.

**Native Format** means the associated file structure defined by the original application with which an electronic file was created. For example, the Native Format associated with a Microsoft Word 2007 file is .docx and the Native Format associated with an Adobe Acrobat file is .pdf.

**Spreadsheet** means an electronic file that displays multiple cells that together make up a grid consisting of rows and columns, each cell containing either alphanumeric text or numeric values, including, but not limited to, files created with Microsoft Excel.

All deadlines required by this Order shall be determined according to the method described in Federal Rule of Civil Procedure 6.

## II. GENERAL PROVISIONS

**Applicability.** This Order shall govern the format of production of documents and information in the Action, unless otherwise agreed by the Parties or ordered by the Court.

**Cooperation.** The Parties agree to conduct discovery in a cooperative manner. To further the application of the FRCP, the Local Rules, and the Honorable Jesse M. Furman's Individual Rules and Practices in Civil Cases ("Individual Rules"), requests for production of ESI should be reasonably targeted, clear, and specific (as is practicable). Counsel for the Parties agree to meet and confer, as soon as is practicable, regarding custodians to be searched and processes to be employed to collect and produce ESI.

**Objections Preserved.** Nothing in this Order shall be interpreted to require disclosure of relevant information protected by the attorney-client privilege, attorney work-product doctrine, or any other recognized and applicable privilege or immunity. Except as provided expressly herein, the Parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of documents and ESI.

**Production.** Absent unusual circumstances that would make it unduly burdensome (in which case the Parties shall confer to discuss alternative production specifications), and subject to modifications as agreed by the Parties, the Parties will prepare their production documents in accordance with the agreed-upon specifications set forth below.

## III. PRODUCTION PROTOCOL FOR ESI

A party will produce ESI, as far as reasonably possible and subject to the proportionality considerations of Federal Rule of Civil Procedure 26(b)(1), as follows:

**Search Terms.** If the Parties agree that potentially responsive ESI shall be searched through the use of search terms ("search term(s)" shall mean each combined string of characters and/or operators as used on particular custodian(s) for a specific date range; for clarity, each word within a string shall not constitute a separate "search term"), then the Parties shall use the process identified herein and shall meet and confer regarding any proposed deviation. To the extent a requesting Party believes that the use of search terms will assist in identifying documents responsive to a given discovery request, the requesting Party shall request by email to the producing Party a list of proposed search terms. Within ten (10) days of such a request, the Parties shall meet and confer regarding a reasonable time for collecting documents. The producing Party shall provide a list of proposed search terms within a reasonable amount of time from the collection of documents, as agreed upon by the Parties. Within fourteen (14) days of receipt of the proposed search terms, the requesting Party shall provide any proposed additional or modified search terms that it reasonably believes are necessary to identify responsive documents and are proportional to the needs of the case. Within fourteen (14) days of receiving any proposed additional or modified search terms, the producing Party will provide a search term hit list or hit report, or advise the requesting Party why additional time is needed. The producing Party shall produce a list of the identity and date range for the producing Party's custodians. To the extent that the producing Party contends that any search term imposes an undue burden, the producing Party shall provide the requesting Party with the following information: the total number of documents with search term hits; and with respect to each proposed or modified search term in the collection, the number of documents with hits for that term. The Parties shall meet and confer regarding the search term hit list or hit report within a reasonable amount of time, but no more than seven (7) days, of receipt of

such list or report. The Parties will thereafter use best efforts to agree to a set of search terms, custodians, and the date range for the producing Party's custodians.

The Parties will continue to meet and confer regarding any search process issues throughout the document collection, review, and production process, as necessary and appropriate, including any supplemental requests by a party to add search terms based on the documents produced by either party.

Nothing in this Order may be construed or interpreted as precluding a producing Party from performing a responsiveness review to determine if documents captured by search terms are in fact relevant to the requesting Party's request(s). Nothing in this Order precludes a Party from using TAR, generative AI review, predictive coding, or some other method, to facilitate its search for or review of its own Documents, but generative AI may not be used by the requesting Party on the producing Party's Documents without disclosure to, and consent of, the producing Party. Defendants consent to the use of Everlaw AI Assistant and Opus 2 AI Assist on Defendants' productions by Plaintiffs' outside counsel of record, staff employed by outside counsel of record's firm, and the consented-to discovery vendors acting at their direction or control, provided that such use occurs solely for purposes of this litigation and not in the Philippines. Plaintiffs consent to the use of Everlaw AI Assistant, Relativity aiR, and eDiscovery AI on Plaintiffs' productions by Defendants' outside counsel of record, staff employed by outside counsel of record's firm, and the consented-to discovery vendors acting at their direction or control, provided that such use occurs solely for purposes of this litigation. Nothing in this Order may be construed or interpreted as precluding a producing Party from performing a privilege review of documents determined to be relevant by any means. In no event shall an individual Party, witness, deponent, vendor (except as

otherwise permitted in this paragraph), or expert witness use generative AI on a producing Party's Documents. Further, nothing in this Order shall be construed or interpreted as requiring the production of all documents captured by any search term if that document is in good faith and reasonably deemed not relevant to the requesting Party's request or is privileged or otherwise protected from disclosure by any applicable privilege or immunity. The fact that a document is captured by the application of a search term or TAR protocol does not mean that such document is responsive to any document request or otherwise relevant to this Action.

**ESI Production Format.** ESI and paper documents that are produced as scanned images shall generally be produced as black and white Group IV single-page TIFF (300 DPI, 1 bit), except that any documents containing color where the color would aid in interpreting the document shall be provided in color in TIFF or .jpg format to the extent possible. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document. Each TIFF image shall be named as its corresponding Bates number. Original document orientation shall be maintained (i.e., portrait to portrait and landscape to landscape). TIFFs shall show any and all text and images that would be visible to the reader using the native software that created the document. For example, TIFFs of email messages shall include the BCC line. If the image does not accurately reflect the document as it was kept in the ordinary course of business, including all comments, edits, tracking, etc., the Parties agree to meet and confer in good faith on production format options. TIFF image files shall be provided in a self-identified "Images" folder.

With the exception of documents to be produced in Native Format as described below, if any document cannot be produced as a single-page TIFF, the Parties may produce alternative forms

of documents, including screenshots in the event no other method is practicable. Where possible, native versions of the documents shall be preserved and made available upon request in native format. If the receiving Party has any issues with the production format, the Parties shall meet and confer about the alternative production. Unless the Parties agree, the producing Party requesting to deviate from the standard format described herein bears the burden of establishing good cause for such deviation. If a receiving Party receives a document in black and white that it believes should have been produced in color because color would aid in interpreting the document or is otherwise important to the document, the receiving Party shall request production of that document in color, which production will not be unreasonably withheld. The Parties shall provide image load files in a format compatible with use in Relativity or other industry-standard litigation platforms so as to facilitate the use of the produced images by a document management or litigation support system. The extracted, relevant metadata should be provided in a standard, compatible file format and extension as the receiving Party specifies, and the searchable text (OCR) for non-native or non-searchable native files will be provided as document-level text (.txt) files or other standard, compatible file format as specified by the receiving Party.

**Clawback Provision.** Under Rule 502(d) of the Federal Rules of Evidence, if the producing Party discloses or produces information in connection with this case that the producing Party thereafter claims to be privileged or protected by the attorney-client privilege or work product protection ("Protected Information"), the disclosure or production of that Protected Information will not constitute or be deemed a waiver or forfeiture–in this or any other action–of any claim of privilege or work product protection that the producing Party would otherwise be entitled to assert with respect to the Protected Information and its subject matter. The producing

Party must promptly notify the requesting Party, in writing, that it has disclosed Protected Information without intending a waiver by the disclosure. Upon such notification, the requesting Party must promptly notify the producing Party that it will make best efforts to identify and return, sequester, or destroy (or in the case of electronically stored information, delete) the Protected Information and any reasonably accessible copies it has. This duty to destroy Protected Information is absolute and shall apply notwithstanding any intent by the requesting Party to challenge the designation. The producing Party shall log such Protected Information in accordance with the requirements set forth below under Privilege Logs. The producing Party retains the burden of establishing the privileged or protected nature of the Protected Information. And nothing in this Order limits the right of any party to petition the Court for an in-camera review of the Protected Information.

**Confidentiality Designations.** The confidentiality designations, as specified in the Protective Order entered in the above-captioned action, requested for each document shall be electronically branded on each page of the document (with the exception of documents produced as native format, as specified below) and shall also be indicated in the metadata load file.

**Native Format.** Microsoft PowerPoint, Microsoft Excel or other spreadsheet type files, and/or .csv files, media files, and any other files that cannot be practically converted to image files shall be produced in their Native Format, unless they require redactions or unless production in Native Format would otherwise be impracticable. Documents produced in their Native Format should contain the Bates Number of the file and the confidentiality designation, in the file title. In addition, native files should be accompanied by an image (TIFF) placeholder that contains the beginning Bates Number and confidentiality designation. Wherever feasible, the producing Party shall

include accompanying metadata in the load file. The Parties agree not to remove metadata from native production, or, in the alternative, provide the metadata associated with that native production via load file. Additionally, if after reviewing production of ESI produced in a non-native format, a receiving Party believes that it is necessary to review a certain document or documents in native format, or that the volume of the documents produced requires production in native format to allow for an orderly and efficient review of the documents, that party may request documents in native form and the Parties shall meet and confer regarding such request.

**Hard Copy Documents.** Hard copy (paper) documents shall be scanned individually, organized as they were kept in the course of business. Where that is not possible the documents should be organized chronologically or in an otherwise orderly manner, and produced electronically as specified in the form of production above. Where a document or group of documents has any external markings (such as an identification spine, applied "post-it note," or any other label or marking), the information thereon shall be scanned and produced along with the remainder of the document.

**Foreign Language.** To the extent that Hard Copy Documents or ESI are produced that contain languages other than English, in whole or in part, the producing Party shall produce all foreign language Hard Copy Documents or ESI in the original language. If Hard Copy Documents or ESI exist in both English and foreign language versions at the time of collection, both versions should be produced. The producing Party shall make reasonable efforts to ensure that all technologies and processes used to collect, process and produce the text of any Hard Copy Documents and ESI (including all TIFF conversion and OCR processes, and the extraction of text from native files) preserves all foreign language text, punctuation, and other characteristics as they

exist in the source native file. To the extent reasonably and technically possible, foreign language text files shall be delivered in UTF-8 and be Unicode compliant, with the correct encoding to enable the preservation of the original language.

**Custodian Information.** To the extent reasonably possible, custodian information shall be collected and produced in the load file for hard copy (paper) documents and loose electronic documents by the person or department from which the document was collected. Custodian information for emails should be populated by the name of the person from whom they were collected. The Parties shall populate a calculated custodian field for email and electronic documents where the custodian field cannot be identified through the collection process. The Parties shall meet and confer regarding the producing Party's identification of the custodians and the date ranges, either as described above regarding search terms ("Search Terms") or at a time as agreed upon by the Parties.

**Parent-Child Relationships.** Parent-child relationships (the association between an attachment and its parent document) shall be preserved whenever reasonable in such a way that a Document and any responsive attachments to that Document are produced in the same production set and are identifiable as parent and child. Parent-child relationships will be identified in the data load file consistent with Exhibit A wherever feasible.

**Modern Attachments.** The Parties agree that, when producing ESI, the producing Party is not obligated to collect or produce documents that correspond to hyperlinks contained within that ESI, absent agreement of the Parties or a showing of good cause. If a receiving Party identifies a specific hyperlinked document that it believes is relevant and necessary, the Parties shall meet and confer in good faith to determine whether the document should be collected and produced.

**De-Duplication.** The Parties will use their best efforts to de-duplicate documents as necessary before producing them; meaning that, if agreed upon, exact duplicates of a document (i.e., all duplicates having the same MD5 hash value as the original document) will be removed to the best of the producing Party's ability from the entire population of documents to be produced. However, (1) attachments to emails shall not be eliminated from their parent emails, (2) a standalone or loose document shall not be eliminated because it is a duplicate of a member of a multi-document family, and (3) hard-copy documents shall not be eliminated as duplicates of responsive ESI. When a document with multiple custodians is de-duplicated, the custodians who possessed the documents withheld from production as duplicates shall be listed in the metadata, consistent with Exhibit A wherever feasible.

**Email Thread Analysis.** Email thread analysis may be used to reduce the volume of emails reviewed and produced. The produced emails must include all of the responsive information from a thread, including attachments. For example, if an email in a string deviates from the thread such that it contains attachments or additional recipients that are not included in the most complete thread, then that individual email and its attachments shall also be produced.

**Redactions.** The producing Party may redact from any document information that is protected from disclosure by applicable privilege, immunity or privacy law, or that the Protective Order entered in this matter allows to be redacted. In the event that the producing Party finds that privilege redactions are needed, the producing Party shall redact only privileged information within the body of the email, in addition to the subject line, if it reveals privileged information. Other identifying information, such as the To/From/Bcc, for example, shall not be redacted. The metadata for any documents containing redactions must identify the presence of redactions

wherever feasible. The Parties reserve the right to redact metadata fields to avoid disclosing privileged information, so long as the redacted entries are clearly identified, and the information provided is sufficient to allow the other Party to assess the basis for any asserted privilege.

**Native Redactions.** In the event that the producing Party finds the redaction of certain documents in image form to be overly burdensome, it may elect to redact such documents in their native form. The produced documents must clearly indicate which portions have been redacted, and the searchable text provided must accurately reflect the contents of the document as produced.

**Privilege Logs.** Parties will provide a log of all documents, except those identified in sub-paragraph (e) below, withheld on the basis of attorney-client privilege, work product protection, or other privilege within a reasonable time after each production. Each party may opt at its own discretion to create privilege logs using one of the following methods.

a. Categorical Log. A categorical privilege log will comply with applicable federal and local rules and will include these fields: date range; document type; sender/recipient/copyees; category description; privilege type; number of redacted documents in category; number of documents withheld in category; and number of documents withheld or redacted including families. The categorical privilege log must provide sufficient detail for each claim of privilege to enable the receiving Party to assess and, if necessary, challenge the claim of privilege. The receiving Party may seek additional information regarding any category of documents, including any date parameters applied, and the Parties shall meet and confer regarding the adequacy of the log and any requested supplementation. Nothing in this

Protocol shall preclude any Party from challenging the sufficiency of a categorical privilege log, including on the basis that the date ranges, categories, or other information provided are insufficient to permit the receiving Party to assess or challenge claims of privilege.

b. Automated Log. An automated privilege log will be generated from the following metadata fields, to the extent they exist, as electronic metadata associated with the original electronic documents.

i. SUBJECT

ii. FILE NAME

iii. AUTHOR

iv. SENDER/FROM

v. RECIPIENTS/TO

vi. CC

vii. BCC

viii. SENT DATE

ix. RECEIVED DATE

x. FILE CREATED DATE

xi. FILE LAST MODIFIED DATE

xii. PRIVILEGE TYPE

xiii. BEG BATES

xiv. END BATES

With respect to the SUBJECT or FILENAME fields, the producing Party may substitute a description of the communication where the content of these fields may reveal privileged information but must indicate that the fields have been revised. Should the receiving Party in good faith have reason to believe a particular entry on the Automated Log does not reflect a privileged document, it may request a Standard Log for that entry, to be produced within two weeks of the request, or within such other reasonable time as the Parties may agree or the Court may order.

c. Standard Log. A standard privilege log, which will include these fields: author/sender/from; recipients/to; cc; bcc; date; privilege type; and a description sufficient to identify the subject of the document and the basis for the privilege assertion.

d. The privilege log fields for email strings will contain the information from the top email in the email string. Whether a categorical, automated, or standard log, Parties shall also populate a field with all other participants identified on the face of the document not already captured in the top email of the email string. Other participants need only be identified for the email strings which are withheld as entirely privileged.

e. Documents dated after the filing of this Action containing privileged and/or work product material that involve communications with outside counsel relating to the lawsuit do not need to be logged. All other date parameters set in this Action shall also apply to this provision.

**Databases.** Each party may specify the form in which ESI is to be produced when that ESI is generated by or maintained in databases. If the producing Party objects to such form, the Parties

shall undertake reasonable efforts to resolve, including, if necessary, meeting and conferring to resolve any disagreements as to production format prior to the time for production. Where a party produces database software files only in native format, the producing Party shall provide a corresponding image (TIFF) placeholder that contains the Bates Number and Confidentiality designation of the file.

**Metadata Fields.** To the extent they are reasonably available, and except with respect to Hard Copy Documents or documents with metadata redacted in whole or in part on grounds of privilege, metadata fields to be included in the DAT file wherever feasible are identified in the attached Exhibit A.

**No Obligation to Convert Third Party Productions**. The Parties agree that any document production received from a third party may be produced in the format in which it was received or according to the requirements of this Order at the receiving Party's discretion.

**Method of Production**. The Parties agree that documents may be produced via secure file transfer or encrypted media, but all protocols for transferring documents designated CONFIDENTIAL and CONFIDENTIAL – ATTORNEYS' EYES ONLY ordered in the Protective Order shall be adhered to.

**Tiffing Settings**. Documents produced in TIFF format shall retain tracked changes, embedded comments, hidden text, and speaker notes. Comments, speaker notes, and hidden text should appear in the text files, unless redactions are necessary to remove privileged material.

**Rule 34**. Documents produced pursuant to this Order shall be deemed to have been produced in the usual course of business under Federal Rule of Civil Procedure 34(b)(2)(E).

**Rolling Productions**. Productions shall be made on a rolling basis, with the first production due as soon as reasonably practicable but no later than forty-five (45) days after completion of the meet and confer process regarding search terms, absent a showing of good cause. Subsequent productions shall be made on a rolling basis as information becomes available.

## IV. SCOPE OF ORDER

This Order may be modified by a stipulated order of the Parties, by agreement, or by the Court for good cause shown. Nothing in this Order is intended to, or does, waive any objections to discovery or admissibility, or any other privileges or immunities or, except as specifically provided herein, impose obligations different than those contained in the Federal Rules of Civil Procedure and/or the Federal Rules of Evidence. The Parties recognize that additional issues or unforeseen circumstances may arise in the course of discovery, and nothing in this Order is intended to, or does, restrict the ability of any party to request additional information or seek additional relief from the Court. The Parties each retain the right to seek exceptions, amendments, or modifications to this Order.

Entered October 29, 2026, New York, New York.

SO ORDERED.

BY THE COURT:

The Honorable Jesse M. Furman
United States District Judge

**APPROVED AS TO FORM:**

Dated: October 28, 2026

*/s/ Jason Murray*

Sean Grimsley (admitted *pro hac vice*)
Eric Olson (admitted *pro hac vice*)
Jason Murray (admitted *pro hac vice*)
Isabel Broer (admitted *pro hac vice*)
Meredith Wheeler (admitted *pro hac vice*)
Samara Hoose (pending *pro hac vice*)
Olson Grimsley Kawanabe Hinchcliff & Murray LLC
700 17th Street, Suite 1600
Denver, CO 80202
Telephone: (303) 535-9151
eolson@olsongrimsley.com
sgrimsley@olsongrimsley.com
jmurray@olsongrimsley.com
ibroer@olsongrimsley.com
mwheeler@olsongrimsley.com
shoose@olsongrimsley.com

Eli J. Kay Oliphant
Adam Joshua Goldstein
Sparacino PLLC
1920 L Street NW, Suite 835
Washington, D.C. 20036
Telephone: (202) 629-3530
eli.kay-oliphant@sparacinopllc.com
adam.goldstein@sparacinopllc.com

*Attorneys for Plaintiffs*

*/s/ James R. Levine*

James R. Levine
Gregg A. Gilman
William S. Kukin
Dana Z. Horowitz
Davis + Gilbert LLP
1675 Broadway
New York, NY 10019
Telephone: (212) 468-4985
jlevine@dglaw.com
ggilman@dglaw.com
wkukin@dglaw.com
dhorowitz@dglaw.com

*Attorneys for Defendant Portland PR Inc.*

*/s/ Steven P. Lehotsky*

Steven P. Lehotsky*
Mary Elizabeth Miller*
Robert B. Dunteman*
Lehotsky Cohn LLP
200 Massachusetts Avenue, NW
Washington, D.C. 20001
Telephone: (512) 693-8350
steve@lehotskycohn.com
mary@lehotskycohn.com
bobby@lehotskycohn.com

Mark M. Rothrock
Lehotsky Cohn LLP
8513 Caldbeck Drive
Raleigh, NC 27615
Telephone: (512) 693-8350
mark@lehotskycohn.com

* Admitted *Pro hac vice*

*Attorneys for Defendants Ogilvy Group, LLC, Ogilvy Public Relations Worldwide LLC.*

**EXHIBIT A**

| **FIELD** | **DESCRIPTION** | **SAMPLE DATA** |
|---|---|---|
| **Bates Begin** | Bates Number of the first page in the document | ABC0000001 |
| **Bates End** | Bates Number of the last page in the document | ABC0000015 |
| **Family Begin** | Bates Number of the first page in the document family | ABC000001 |
| **Family End** | Bates Number of the last page in the document family | ABC000030 |
| **Attachment Count** | Total number of attachments to each parent document | 2 |
| **Page Count** | Number of pages produced | 15 |
| **Custodian** | The name of the custodian of the document | Doe, John |
| **All Custodians** | When documents have been globally deduplicated, the custodians who had duplicates of the identical document | Smith, Mary; Jones, William; Brown, Jane |
| **From** | Author of the email | Doe, John <jdoe@company.com> |
| **To** | Recipient(s) of the email | Smith, Mary <msmith@company.com>; Jones, William <jwilliams@company.com> |
| **CC** | Copyees of the email | Brown, Jane <jbrown@company.com> |
| **BCC** | Blind Copyees of the email | Doe, John <jdoe@company.com> |
| **Email Subject** | Subject of the email message | RE: Our Project |

| FIELD | DESCRIPTION | SAMPLE DATA |
|---|---|---|
| **File Name** | Original file name of the document; may contain the subject of the email for emails | RE Our Project.msg<br>MyAttachment.xlsx |
| **File Extension** | Original file extension of the document when it was collected | .msg<br>.pdf<br>.docx |
| **Author** | Value of the author field in the native file | Doe, John |
| **Date/Time Sent** | Date and time email was sent | 12/31/2023 14:54:27 |
| **Date/Time Received** | Date and time email was received | 12/31/2023 14:54:29 |
| **Date Created** | Date document was created | 12/30/2023 |
| **Time Created** | Time document was created | 18:50:20 |
| **Date Modified** | Date document was last modified | 12/31/2023 |
| **Time Modified** | Time document was last modified | 09:30:15 |
| **Time Zone** | Time zone of document | EST or UTC |
| **Source Path** | Original path to the folder or directory where the document was stored | Inbox\MyFolder<br>C:\Users\jdoe\My Documents |
| **MD5 Hash** | Unique identifier generated using the MD5 cryptographic hash function | D564668821C34200FF-3E32C9BFDCCC80 |
| **Confidentiality** | The confidentiality designation requested for the document | Highly Confidential |
| **Text File** | Location of the text file, relative to the root of the volume | TEXT\000001\ABC0000001.TXT |

| FIELD | DESCRIPTION | SAMPLE DATA |
|---|---|---|
| **Native File** | For documents produced natively, a link to the location of the native file, relative to the root of the volume | NATIVE\00001\ABC000015.XLSX |
| **Redaction** | For all documents a designation of "Yes" for documents that are redacted, and "No" for documents that are not redacted | Yes<br>No |
| **Redaction Reason** | Reason for redaction | Attorney-Client Privilege<br>Attorney Work Product<br>Personal Information/Privacy<br>Other (specified) |